Sheila Penrose Larsen LAND, Plaintiff and Respondent,

v.

William Dennis LAND, Defendant and Appellant.

No. 16238.

Supreme Court of Utah.

Jan. 22, 1980.

---

Paul N. Cotro Manes, Salt Lake City, for defendant and appellant.

Neils E. Mortenson, Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Defendant appeals, challenging the district court's interpretation of the term "equity" as it appears in the stipulation and property settlement agreement of the parties.

Plaintiff obtained a decree of divorce from defendant on November 19, 1974. Said decree specifically adopted the provisions of the written stipulation in question, and, where pertinent to this appeal, the stipulation provided:

7. The parties agree that the business known as the Eat'n House located at Salt Lake City, Utah, shall be awarded entirely to Defendant with Defendant having full ownership of all assets and full responsibility for all debts arising therefrom.

8. The Defendant agrees to assume as his sole obligation all debts and obligations incurred by the parties up to the 29th day of October 1974 except those specifically mentioned herein and agrees to defend and hold the Plaintiff harmless therefrom.

9. The parties agree that the Plaintiff shall receive as her sole property a 50 percent interest in the present equity of the home and real property located at 5171 South 2870 East, Salt Lake City, Utah and the Defendant shall receive as his sole property a 50 percent interest in that equity. The value of the equity shall be determined not later than January 1, 1975 by at least two independent appraisers selected by the parties for that

purpose. Should the appraisals fail to agree, the two appraisers shall select a third appraiser and an average value shall be determined. The percentage interests shall be paid to the parties at the time of receipt of funds on any sale of the property, or shall be paid by the Plaintiff within two years following the date of majority or emancipation of the youngest surviving child of the parties. The 50 percent interest awarded to the Defendant shall bear interest at 3 percent per annum from January 1, 1975 until paid. Any increase in equity in the home and real property after the fixing of the interests described herein shall accrue to the benefit of the Plaintiff and Defendant shall have no rights over any such increase.

＊　＊　＊　＊　＊　＊

11. The Plaintiff specifically agrees to assume as her sole obligation the first mortgage on the home and to make the required payments on that mortgage. The Defendant specifically agrees to assume as his sole obligation the second mortgage on the home and to make the required payments until this mortgage is paid in full.

The debts and obligations recited in the stipulation (in addition to the two mortgages), were mostly associated with defendant's business establishment, the Eat'n House. Certain of said debts (totalling some $27,000), had been reduced to judgment and hence constituted liens on the real property at that time.

This matter came before the district court on cross-motions to modify the decree of divorce for various reasons not pertinent here. In addition, plaintiff's motion sought to compel defendant to quit-claim to her all of his interest in the subject real property. Plaintiff asserted that defendant had no

actual interest in the property by reason of the fact that no equity existed therein. This was so, explained plaintiff, because the total of the mortgages and the other liens exceeded the value of the property at the time of the stipulation and decree of divorce.[1]

The court below ordered that appraisal be made as of January 1, 1975, and that defendant convey to plaintiff (upon payment to him of the value, if any, of the interest granted him by the stipulation), all interest in the property. This interest was to be measured by calculating the "equity" in the property as the market value as of January 1, 1975, less any liens, mortgages, obligations or other encumbrances as of that date. It is only from that order that defendant appeals.

Defendant's sole contention on appeal is that the court below failed "to do equity" in interpreting the stipulation. However, he concedes that the record is silent "as to just what was meant by the parties for the calculation of the equity in the real property." He simply asserts that the trial court should have calculated the equity as the appraised value, less the amount of the first and second mortgages only.

Defendant's contention that the court must look behind his stipulation in order to do equity is without merit. True it is that, in making a division of property by a decree of divorce a trial court is governed by general principles of equity.[2] It is likewise true that the court retains continuing jurisdiction over the parties and may modify the decree due to a change in circumstances, equitable considerations again to govern.[3] It must, however, be added that, when a decree is based upon a property settlement agreement, forged by the parties and sanctioned by the court, equity must

---

1. Despite the provisions of paragraph 9 of the stipulation, no appraisal of the property was undertaken. However, the undisputed affidavit of plaintiff estimated the value of the property at the time of the divorce to be $52,000. Inasmuch as the liens on the property totalled $27,000 and the two mortgages totalled $25,000, the remaining equity would be nominal at best, assuming the accuracy of the trial court's interpretation (discussed infra).

2. U.C.A., 1953, 30-3-5.

3. Id. See also, *Carson v. Carson*, 87 Utah 1, 47 P.2d 894 (1935).

take such agreement into consideration.[4] Equity is not available to reinstate rights and privileges voluntarily contracted away simply because one has come to regret the bargain made.[5] Accordingly, the law limits the continuing jurisdiction of the court where a property settlement agreement has been incorporated into the decree,[6] and the outright abrogation of the provisions of such an agreement is only to be resorted to with great reluctance and for compelling reasons.[7]

 The parties chose to use the term "equity" without equivocation or elaboration, and, seemingly, in its usual and ordinary context. Consequently, we deem it appropriate for the trial court to have placed a common usage meaning upon the term and that is precisely what it did. By interpreting the term "equity" as it did, the court made an effort, not to supplant the original agreement, but simply to construe it in the manner as contemplated by the parties at the time it was drafted.

The term "equity" is described as the money value of a property or of an interest in property in excess of claims or liens against it.[8] It is the amount of value of a property above the total liens or charges.[9] It is the value in excess of mortgage or other liens.[10] The courts have generally followed the foregoing definitions of the term.[11]

 Where possible, the underlying intent of a contract is to be gleaned from the language of the instrument itself; only where the language is uncertain or ambiguous need extrinsic evidence be resorted to.[12] No such ambiguity is present in this case, nor was it asserted. Also, the mere fact that the parties urge diverse definitions of contract terminology does not, per se, render it ambiguous.[13]

 The trial court acted well within its discretion in applying the commonly accepted definition of the term "equity" as used in the context of the stipulation [14] and its judgment is therefore affirmed. No costs awarded.

CROCKETT, C. J., and WILKINS and STEWART, JJ., concur.

---

4. 47 Am.Jur.2d Judgments, Sec. 1082; *Nieminen v. Pitzer*, 281 Or. 53, 573 P.2d 1227 (1978).

5. Defendant concedes that he would normally be bound by his stipulation but cites the case of *Klein v. Klein*, Utah, 544 P.2d 472 (1975) as supportive of his position. Such reliance is misplaced. That decision dealt with a situation wherein an original decree of divorce, not itself the product of any agreement, was modified by the trial court according to the terms of an alleged stipulation which the appellant denied making. The trial court has discretion to adopt or reject an agreement between the parties as part of the original decree (or a modification thereof), as equity might dictate. See *Nelson on Divorce*, (2d ed., 1945), § 13.45.

6. *Callister v. Callister*, 1 Utah 2d 34, 261 P.2d 944 (1953); see also Clark, *The Law of Domestic Relations*, Sec. 16.13.

7. See *LeBreton v. LeBreton*, Utah, 604 P.2d 469 (1979).

8. Webster's Third New International Dictionary, Unabridged, 1961.

9. Black's Law Dictionary, 5th Ed., 1979.

10. Funk & Wagnall's Standard Comprehensive International Dictionary, 1976.

11. See e. g., *Comstock v. Fiorella*, 260 Cal. App.2d 262, 67 Cal.Rptr. 104 (1968); *Pierson v. Bill*, 138 Fla. 104, 189 So. 679 (1939); *Des Moines Joint Stock Land Bank v. Allen*, 220 Iowa 448, 261 N.W. 912 (1935).

12. *Oberhansly v. Earle*, Utah, 572 P.2d 1384 (1977); *Bennett v. Robinson's Medical Mart*, 18 Utah 2d 186, 417 P.2d 761 (1966).

13. *Camp v. Deseret Mutual Benefit Ass'n*, Utah, 589 P.2d 780 (1979).

14. *Pugh v. Stockdale*, Utah, 570 P.2d 1027 (1977); *Commercial Bldg. Corp. v. Blair*, Utah, 565 P.2d 776 (1977).