Melanie A. COLEMAN, Plaintiff and Appellant,

v.

Dennis D. COLEMAN, Defendant and Respondent.

No. 18579.

Supreme Court of Utah.

April 30, 1984.

Bradley H. Parker, Salt Lake City, for plaintiff and appellant.

---

David E. Yocom, Salt Lake City, for defendant and respondent.

HALL, Chief Justice:

Plaintiff Melanie Coleman appeals an order denying her petition to modify the property settlement provisions of her decree of divorce.

Plaintiff and defendant were married on June 5, 1975. Soon thereafter, defendant made a downpayment on a building lot using money he had earned prior to the marriage. He obtained a construction loan and proceeded, with the help primarily of his father, to build a house. Plaintiff participated very little in the actual construction of the house. She did, however, contribute funds toward the repayment of the construction loan, at least while she and defendant were married.

After five childless years of marriage, the parties separated. Plaintiff retained the services of an attorney, Matt Biljanic, and filed for divorce on May 22, 1980. In the divorce complaint, Biljanic prayed that plaintiff be awarded, *inter alia*, a share of the equity in the parties' residence.

As a result of the parties' separation and pending divorce proceedings, plaintiff became sorely depressed and sought the assistance of her family physician, Dr. Cole Young. Dr. Young testified (at the hearing on the instant petition) as to plaintiff's emotional condition at the time she consulted him. He described her as "very depressed with a little anxiety." He said that he counselled her to avoid making decisions during that time and prescribed a mild tranquilizer and an antidepressant. He also testified that he did not consider her condition so severe that she needed to receive treatment from a psychiatrist or psychologist. He gave his opinion that she was fully competent, enough so in fact that she could continue her employment, which required the handling of thousands of dollars.

In addition to her consultation with Dr. Young, plaintiff also received professional treatment from a psychologist, Dr. Kenneth Coleman, during the pendency of the divorce. Dr. Coleman's testimony at the hearing was similar in most respects to that of Dr. Young with regard to plaintiff's condition. He described her as severely distressed and unable to look out for her future adequately. On the other hand, however, he acknowledged her capability to continue her demanding employment and to make day-to-day decisions.

In anticipation of the award to plaintiff of a share of the equity in the residence, defendant had put the residence up for sale. When plaintiff learned that he had done so, she encouraged him to take it off the market and told him that he could have it outright. She testified at the hearing that her decision to give defendant the property was motivated by her desire and hopes that they could reconcile their differences and get back together.[1] Accordingly, she withdrew her claim (in the divorce complaint) to a share of the residence and directed her attorney (Biljanic) to prepare a stipulation and property settlement agreement (hereinafter the "stipulation") giving defendant the house as well as the equity therein.

Biljanic testified that when plaintiff came to him with the request that he prepare the stipulation, he strongly advised her against giving up her equity in the property. When she refused to follow his advice, he agreed to prepare the stipulation as requested, but only upon the condition that she sign the following statement:

> Plaintiff has quitclaimed her interest in the home and real property even though she was advised by her counsel not to do so. She has done this after extensive counseling and appears to be doing so voluntarily and without any coercion.[2]

---

1. This was not the only reason given by plaintiff at the hearing for her decision to give up the property. As will be shown infra, she also stated, in a contradictory vein, that she had given up the property because defendant had forced her to do so.

2. This statement was specifically made a part of the stipulation.

Plaintiff signed this statement and the stipulation on July 23, 1980. Two weeks later, she signed a quitclaim deed conveying whatever interest she had in the real property to defendant.

Biljanic further testified that had he not felt sure that plaintiff was executing the stipulation of her own free will and that she was competent to do so, he would certainly not have allowed her to execute the same.

A decree of divorce, based primarily upon the terms of the stipulation, was issued by the court on July 31, 1980. Said decree awarded defendant the house and real property of the parties free and clear of any claim of plaintiff.

Approximately thirteen months later, on September 11, 1981, plaintiff, through the assistance of new counsel, filed the instant petition for modification of decree of divorce seeking one-half of the equity in the real property. Her petition having been denied, she now seeks this Court's review.

On appeal, plaintiff contends that the evidence she presented at the modification hearing established the invalidity of the stipulation, in that it showed that she was incompetent at the time she signed the said stipulation and that she did so under defendant's extreme coercion and undue influence. In view of the factual nature of this contention, plaintiff reminds the Court of its authority under Rule 72(a) of the Utah Rules of Civil Procedure to review questions of fact in equitable proceedings such as these.

Plaintiff's argument that she was incompetent at the time she signed the stipulation is purportedly supported by the testimony of Doctors Young and Coleman. As indicated previously herein, both doctors testified that at the time in question, plaintiff was under severe stress and should not have been making decisions relative to her future welfare.

The trial court analyzed all of the evidence before it in this regard and made the following observations and findings:

[T]he Court is impressed with the testimony of Matt Biljanic, that although she [plaintiff] was upset and distraught, he felt she was fully competent to enter into this agreement. He felt that as an officer of the Court and a member of the bar, he testified he would not have allowed her to sign it if he felt she was not competent.

Further, the Court notes from the medical testimony presented, that each of the physicians who testified went out of their way to state that they did not believe she was incompetent. They believed that she was under abnormal stress, and I believe that also, and I'm very sympathetic with that; but the issue in this case is ... [d]id she sign the agreement under a situation where she was incompetent to contract with another person? And the Court looks at that situation in the same light as it would look at a situation where she went to the bank to borrow money. Could we say that she really didn't understand what it was she was doing?

It seems clear to me that she was not incompetent, and I would also find as a matter of fact that during this period of time while her physician testified she was under stress and having difficulty making decisions, he advised her to continue working at a job where she literally handled thousands of dollars, and so she was certainly capable of making those decisions.

For this Court to say that at this time she was not capable of making the decisions she entered into in the property settlement agreement here, I think would be contrary to the facts.

We agree with the trial court's analysis of the facts on this issue and its resultant finding that plaintiff was fully competent to execute the stipulation.

Plaintiff's claim that defendant exercised undue influence over her and coerced her into executing the stipulation rests solely upon factual representations made by her during her testimony on direct examination. She represented that defendant had

broken her arm during an argument over the division of the real property, and on another occasion had even threatened her with a gun. She claims that the coercive effect of such acts led her to execute the disputed stipulation.

Plaintiff's testimony in respect to the involuntariness of her act was utterly rejected by the trial court in view of the overwhelming contradictory evidence. Plaintiff's own testimony on cross-examination as well as at her deposition contradicted her representations on direct examination. On both those occasions she stated that her arm had been broken as the result of a fall which occurred during an argument with defendant over his new girlfriend—totally unrelated to the issue of property division or settlement. This latter testimony was confirmed by defendant. Plaintiff also testified during cross-examination, as pointed out previously, that her reason for giving the property to defendant was that she anticipated a reconciliation between them. In addition, she stated that defendant never forced or coerced her to contact her own lawyer and have him prepare a property settlement agreement, rather she did so of her own free will and volition. As to the alleged gun threat, defendant denied the same.

The trial court summarized its view of the foregoing evidence as follows:

> I think that she made a bad bargain. I think that she certainly should not have disregarded the advice of her lawyer. She certainly should have looked into this situation. She was entitled to some of the results in a normal situation, some of the equity in this house, but she voluntarily chose to give that away. And while the Court is sympathetic and says that that was not a good thing for her to do, the Court cannot say that she did not do so voluntarily.
>
> I believe that she hoped, as she testified, that her giving away the house in this case would result in getting it over with so that she wouldn't have to go

through the pain of a trial, she hoped that perhaps her husband would come back to her. She indicated that she always held out that kind of hope, and so she traded away her rights to equity in this home upon her belief that she was receiving something in return.... She obviously was wrong, and it is unfortunate that she was wrong, but nevertheless, this Court concludes as a matter of law that the agreement between the parties was valid, ... that there was no force or duress used to obtain the particular agreement in question, ....

Again, we hold that the facts and the evidence relative to this issue provide an adequate basis for the court's finding that plaintiff acted voluntarily and without undue influence or coercion in executing the stipulation.

Plaintiff's concluding argument is that by showing incompetence and coercive conduct relative to the execution of the property settlement agreement, she has satisfied the standard governing the modification of divorce decrees.[3] This argument is, however, fatally presumptive. It presumes findings will be made in accordance with plaintiff's position on the foregoing issues. That presumption does not follow in light of our negative resolution of those issues. Thus, the argument fails.

Our holding today is in concert with the standard previously established by this Court for modifying a divorce decree. That standard, articulated in a similar context, is as follows:

> True it is that, in making a division of property by a decree of divorce a trial court is governed by general principles of equity. It is likewise true that the court retains continuing jurisdiction over the parties and may modify the decree due to a change in circumstances, equitable considerations again to govern. It must, however, be added that, when a decree is based upon a property settlement agreement, forged by the parties and sanctioned by the court, equity must

---

**3.** The standard is set forth in *Land v. Land,* Utah, 605 P.2d 1248 (1980); *Chandler v. West,* Utah, 610 P.2d 1299 (1980); *Despain v. Despain,* Utah, 610 P.2d 1303 (1980).

take such agreement into consideration. Equity is not available to reinstate rights and privileges voluntarily contracted away simply because one has come to regret the bargain made. Accordingly, the law limits the continuing jurisdiction of the court where a property settlement agreement has been incorporated into the decree, and the outright abrogation of the provisions of such an agreement is only to be resorted to with great reluctance and for compelling reasons.[4]

We hold that plaintiff has failed in her burden of satisfying the foregoing standard. We therefore decline to reinstate the property rights she voluntarily relinquished.

Affirmed.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.