Helen Charlotte EPSTEIN, Plaintiff and Appellant,

v.

William Warren EPSTEIN, Defendant and Respondent.

No. 860052–CA.

Court of Appeals of Utah.

Aug. 28, 1987.

David S. Dolowitz, Parsons, Behle & Latimer, Salt Lake City, for plaintiff and appellant.

B.L. Dart, Dart & Stegall, Salt Lake City, for defendant and respondent.

Before DAVIDSON, GREENWOOD and JACKSON, JJ.

## OPINION

DAVIDSON, Judge:

Plaintiff appeals from an Order on Order to Show Cause claiming that the court erred in interpreting the Decree of Divorce to pay nothing to her from an invention and in failing to award her an interest in defendant's retirement plan. We reverse and remand for a new hearing on the issue of net proceeds.

The Decree of Divorce between the parties was entered in the Third District Court on January 5, 1977, dissolving a 23 year marriage. Early in the marriage, plaintiff worked in clerical positions to enable defendant to obtain a doctorate. He later became a professor of chemistry at the University of Utah.

In the latter years of the marriage, defendant became involved in a partnership with two other individuals. The partnership purpose was to develop and market a medical invention conceived by defendant. Prior to the divorce, defendant contributed approximately $6,822 to the partnership for initial development of this invention; such contribution entitled defendant to a 42% interest in the partnership. The partnership's initial checking account was opened in February 1974 and was closed in August 1976. The majority of deposits were from the partners' contributions and the funds were expended mainly on developmental costs relating to the partnership purpose.

On November 18, 1977, the partnership and Sterling Drug Inc. (Sterling) signed an agreement which granted Sterling an exclusive option and license to make, use and sell the invention and products derived therefrom. The initial option period commenced on November 5, 1977, and extended for 12 months. In consideration of the option, Sterling paid the partnership $25,-000 upon execution of the agreement and $2,500 per month for the 10 month period immediately following the agreement. Sterling could continue the option for an additional one year period for the sum of $25,000 but did not do so.

The Decree of Divorce awarded defendant all right, title and interest in and to his invention but provided that plaintiff was to receive "one-half of the net proceeds realized by the defendant from the sale, licensing or assignment of his interest in this invention." Defendant was also awarded as his sole and separate property "his nontransferable interest in his retirement plan through his employment at the University of Utah."

In June 1978, plaintiff filed an Order to Show Cause to compel an accounting and payment of her one-half of defendant's share of the net proceeds from the invention. The Order to Show Cause was

amended in August 1980, and was heard on October 16, 1980. The trial court's Minute Entry of October 21, 1980, records that plaintiff's alimony was increased from $400 to $500 per month, that "plaintiff is to receive whatever interest she can get as a divorced spouse from his [defendant's] retirement fund" and "plaintiff's motion for one-half the profit from net proceeds of [the] invention is denied."

In February 1983, defendant filed a Motion for Order Clarifying Minute Entry Ruling and for Leave to File Formal Entry Based Upon Minute Entry Ruling. Hearing on this motion and several other related motions was held on March 29, 1983. Plaintiff's objections to defendant's proposed Findings of Fact, Conclusions of Law and Order were heard on May 15, 1984. The Order on plaintiff's Order to Show Cause was signed on June 21, 1984. Germane to this appeal, the Order decreed:

1. Plaintiff's Order to Show Cause that defendant be punished for contempt in failing to share with plaintiff a share of the net proceeds of his invention is denied. There have been no net proceeds realized by the defendant from the sale, licensing and assignment of his interest in the invention, and plaintiff's request for a distribution is denied because there is nothing to distribute.

3. Plaintiff is not entitled to receive any interest in defendant's teacher's retirement plan or fund except to the extent that the fund documents provide for an interest to her, if any.

Plaintiff's Notice of Appeal was filed on July 19, 1984. Plaintiff contends that the trial court erred by failing to award her any net proceeds from the invention; that she is entitled to a rehearing or new trial to determine her interest in defendant's retirement plan; that defendant's annual income was less than that claimed; and the

court erred by awarding her attorney's fees of $200 rather than $950. The final two issues were abandoned by plaintiff at oral argument and will not be considered further by this Court.

We note that the parties entered into a Stipulation on January 5, 1977, which was subsequently adopted verbatim by the court.[1] The Utah Supreme Court in *Land v. Land*, 605 P.2d 1248, 1250-51 (Utah 1980), considered an appeal dealing with a written stipulation, the provisions of which were adopted in the divorce decree. Since the circumstances of *Land* are so similar to this case, the following reasoning of the Court is critical:

It must, however, be added that, when a decree is based upon a property settlement agreement, forged by the parties and sanctioned by the court, equity must take such agreement into consideration. Equity is not available to reinstate rights and privileges voluntarily contracted away simply because one has come to regret the bargain made. Accordingly, the law limits the continuing jurisdiction of the court where a property settlement agreement has been incorporated into the decree, and the outright abrogation of the provisions of such an agreement is only to be resorted to with great reluctance and for compelling reasons (footnote omitted).

The Stipulation, in paragraph 13, recorded that "[d]efendant presently has a nontransferable interest in a retirement plan through his employment as a member of the faculty of the University of Utah. The parties agree that all interests in this retirement plan are the sole and separate property of the defendant." Plaintiff contended at the Order to Show Cause proceeding that defendant had informed her that she was not entitled to any of his academic retirement "by law" and that this

1. Finding of Fact 5 states "[d]uring the course of the marriage the parties have acquired real and personal property, which real and personal property was divided between the parties pursuant to the terms of a written Stipulation heretofore submitted to the Court; which Stipulation the Court herewith approves and adopts and makes part of its Findings of Fact." Conclusion

of Law 3 records that "[t]he Stipulation of the parties is hereby adopted verbatim by this Court and is made part and parcel of these Conclusions of Law." Both parties were represented by counsel at the time of entering into the Stipulation which was prepared by plaintiff's counsel and signed by both parties and counsel.

was a fraudulent representation. The Findings of Fact, made pursuant to the Order to Show Cause proceeding, state that defendant "did not make fraudulent misrepresentations to the plaintiff upon which plaintiff relied...." Utah R.Civ.P. 52(a) requires that findings of fact "shall not be set aside unless clearly erroneous" and the opportunity of the trial court to judge the credibility of the witnesses must be considered. We see no reason not to accept the Finding of Fact concerning the lack of fraudulent misrepresentation by defendant. We also believe that the language employed by the trial judge in the Order on plaintiff's Order to Show Cause simply indicates that she is only entitled to that portion of defendant's retirement fund, if any, which the fund itself might provide for spouses in plaintiff's situation. It is incumbent upon plaintiff to ascertain if the retirement plan provides any interest to her. We do not believe that this Order is inconsistent with the Decree of Divorce which states that defendant shall possess "all interests" in the plan.

█ Paragraph 6 of the parties' Stipulation concerns the equitable division of their real and personal property. Subparagraph (f) deals with the division of the interest in the invention and within this subparagraph, the term "net proceeds" is defined. The appropriate portion of this subparagraph reads:

> During the course of the marriage the defendant has developed an invention which is a liquid and fabric process. The defendant presently has a forty-two percent (42%) interest in the aforesaid invention. There shall be awarded to the plaintiff one-half of the net proceeds realized by the defendant from the sale, licensing or assignment of his interest in this invention. There shall be awarded to the defendant one-half of the net proceeds realized by the defendant from the sale, licensing or assignment of his interest in this invention. Net proceeds shall mean the proceeds from the sale, licensing or assignment of the aforesaid invention less any costs of development, sale or exploitation, including attorney's fees, *incurred by the defendant after the date of the execution of this agreement* (emphasis added).

This definition squares with "[g]ross proceeds, less charges which may be rightly deducted." Black's Law Dictionary 542 (5th ed. 1983). "Incur" is defined as "[t]o have liabilities cast upon one by act or operation of law, as distinguished from contract, where the party acts affirmatively. *To become liable or subject to.*" Black's at 392 (emphasis added).

In *Acton v. Deliran,* 737 P.2d 996, 999 (Utah 1987), the Utah Supreme Court reviewed the case law concerning findings of fact. Important to the understanding of the nature of these findings and their importance to any case on appeal are the following: "failure of the trial court to make findings on all material issues is reversible error unless the facts in the record are 'clear, uncontroverted, and capable of supporting only a finding in favor of the judgment' "; [2] the findings must indicate that the "court's judgment or decree 'follows logically from, and is supported by, the evidence' "; [3] and "findings 'should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.' " [4]

In the instant case, the trial court's finding of fact, concerning the issue of whether plaintiff was to receive her decreed share of net proceeds realized from the invention, does not comport with what is required of valid findings of fact. Specifically, there must be findings concerning the nature and amount of the proceeds received from Sterling and what costs were incurred *after*

---

2. *Kinkella v. Baugh,* 660 P.2d 233, 236 (Utah 1983). *See also Sorenson v. Beers,* 614 P.2d 159, 160 (Utah 1980); *Romrell v. Zions First National Bank,* 611 P.2d 392, 394–95 (Utah 1980); *Rucker v. Dalton,* 598 P.2d 1336 (Utah 1979); *Anderson v. Utah County Board of County Commissioners,* 589 P.2d 1214 (Utah 1979).

3. *Smith v. Smith,* 726 P.2d 423, 426 (Utah 1986).

4. *Rucker,* 598 P.2d at 1338. *See also Mountain States Legal Foundation v. Public Service Commission,* 636 P.2d 1047, 1051 (Utah 1981).

January 5, 1977, the date of the Stipulation. These findings are absolutely necessary to determine if there were net proceeds as defined in the Stipulation.[5]

We reverse the court below as to its conclusion of law concerning net proceeds only and remand for a new hearing on that issue in accordance with this opinion. Costs against defendant.

GREENWOOD and JACKSON, JJ., concur.

---

5. It appears that the Stipulation was forgotten by all parties in this action. This is easily explained with two judges and six attorneys having worked on the matter. However, had the Stipulation been treated as part of the Findings and Conclusions of the divorce as was intended, considerable time, money and effort could have been saved.