2024 UT App 6

## THE UTAH COURT OF APPEALS

RHONDA S. HOLT,
Appellee,
*v.*
CHRISTOPHER JOHN HOLT,
Appellant.

Opinion
No. 20220090-CA
Filed January 11, 2024

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 044902588

Ben W. Lieberman, Attorney for Appellant

Matthew A. Steward and Katherine E. Pepin,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and
DAVID N. MORTENSEN concurred.

ORME, Judge:

¶1      Christopher and Rhonda Holt's divorce was finalized in 2004 after the entry of a stipulated settlement agreement and the district court's entry of a divorce decree. Per the divorce decree, Rhonda[1] was awarded a commercial property in which she operated a salon and Christopher was awarded an equity interest in the property redeemable "when the property is sold." From the time the court entered the divorce decree, Rhonda operated the

---

1. Because the parties share the same last name, we refer to them by their first names, with no disrespect intended by the apparent informality.

salon and did not sell the property or satisfy Christopher's outstanding interest.

¶2 Years later, Christopher petitioned the district court asking that it require Rhonda to sell the property and satisfy his equity interest, first on the rationale of modifying the divorce decree and later on the rationale of enforcing it. He contended that because "Utah law implies a reasonable time under the circumstances," the court should compel Rhonda to sell the property. The district court ultimately determined that Rhonda had no obligation to sell the property and declined to impose any deadline by which she had to do so. But under Utah law, a reasonable time for performance will be implied if a contract fails to include a specific time for performance. And on the facts of this case, we conclude that a reasonable time for Rhonda's performance extends to the time when she ceases to operate a salon on the property.

BACKGROUND

¶3 Christopher and Rhonda were married in 1988. In 2004, Rhonda filed a complaint for divorce, and soon after, the district court granted Rhonda's motion for default judgment. The court then entered a divorce decree based on the parties' Stipulation and Settlement Agreement (the stipulation). The record reflects that when the stipulation was entered, each party was represented by counsel. Christopher's counsel withdrew after the stipulation was filed, just prior to entry of the decree.

*The Stipulation and the Decree*

¶4 The stipulation included an integration clause indicating that it was the parties' final agreement. Specifically, it was "a complete settlement of all rights either party may have in the other's property" and any "valid" modification or waiver of the stipulation's terms must be "in writing and signed by both parties before a notary public." The stipulation provided that neither

party would receive alimony. Pursuant to the stipulation, the district court entered findings of fact and conclusions of law and a divorce decree that mirrored the provisions of the stipulation.

¶5    At the heart of this matter is section 9(B) of the decree. First, it awarded Rhonda the salon property and ordered Christopher to "execute a quit claim deed" in her favor. Second, it reserved for Christopher "an equitable lien for one-half of the net equity in the property when the property is sold." Third, it defined net equity as "the gross selling price less realtor commissions and normal closing costs." And fourth, it reiterated that Christopher "shall only be entitled to his equity when the property is sold." The preceding section—section 9(A)—awarded Rhonda the parties' home "free and clear from any claim by" Christopher and instructed that Christopher was to "execute a quit-claim deed in favor of" Rhonda within ten days following entry of the decree. It is noteworthy that section 9(B), in contrast to section 9(A), did not include a specific timeframe related to Rhonda's satisfaction of Christopher's equity interest in the property.

*The Petition to Modify the Decree*

¶6    In October 2018, over fourteen years after the decree was entered, Christopher filed a petition to modify the decree, claiming "a material and unforeseeable substantial change of circumstances." Specifically, the petition indicated that "the parties did not anticipate that fourteen years would pass" during which Christopher's equity interest in the property would go unpaid. Christopher sought an order compelling Rhonda to either sell or refinance the property and to satisfy Christopher's outstanding interest.

¶7    In response, Rhonda moved to dismiss the petition on the ground that Christopher had failed to support his assertion of a material and unforeseeable change in circumstances warranting the requested modification of the decree. Rhonda acknowledged that Christopher would be entitled to have his equity interest in

the property cashed out, but she argued that under the plain language of the decree, he was entitled to payment *only* when the property was sold, which had not yet occurred. Rhonda noted that the parties' circumstances had not materially changed since the court entered the decree in 2004—she had not sold or refinanced the property and she continued to operate her salon on the property. Quoting *Land v. Land*, 605 P.2d 1248 (Utah 1980), Rhonda argued that "when a decree is based upon a property settlement agreement, forged by the parties and sanctioned by the court, equity must take such agreement into consideration." *Id.* at 1250–51. She noted our Supreme Court's position that "[e]quity is not available to reinstate rights and privileges voluntarily contracted away simply because one has come to regret the bargain made." *Id.* at 1251. Rhonda asserted that the decree does not impose a deadline by which she had to sell the property and "clearly withholds distribution" of Christopher's interest in the property until it is sold. Thus, she maintained that Christopher "failed to demonstrate that there has been a substantial change in circumstances that was not [contemplated] by the parties at the time the decree was entered."

¶8     In his opposition to the motion to dismiss, Christopher claimed that he was not represented by counsel during the divorce action and thus was not involved in drafting the decree.[2] He also claimed that he relied on representations Rhonda made both before and after entry of the decree that she would refinance or sell the property "in the very near future to pay him out." Christopher asserted that prior to the divorce, the parties had received an $84,000 loan from his parents to purchase the property and that when his parents passed away some years later,

---

2. Christopher, then represented by new counsel, may have been confused about this because the decree was entered on the basis of his default. But the record in this case demonstrates that Christopher was represented by counsel right up until the time the decree was entered on the basis of his stipulated default.

$84,000 was taken out of his inheritance to pay the obligation. Christopher argued that under the plain language of the decree and under Rhonda's suggested interpretation of section 9(B), he "could die and not receive any benefit from the agreement" and he could potentially lose his interest in the property if Rhonda were to pass away or transfer the property to someone else, thereby avoiding the satisfaction of Christopher's equity interest.

¶9     Rhonda responded that the petition before the court was one to modify the decree based on a theory of material change of circumstances—not one to enforce the decree. She argued that this was really a situation of unilateral mistake on his part, and she reiterated her position that hindsight and dissatisfaction with a prior stipulation are not adequate grounds for relieving parties of their contractual obligations. Rhonda again acknowledged her obligation to pay Christopher his share of the equity when the property is sold, but she pointed out that the decree did not specify a sale deadline. She also noted that it would have been very easy to incorporate such a date into the stipulation and the decree if that had been the parties' intention. To support this position, Rhonda pointed out that section 9(A) of the decree imposed a ten-day deadline for Christopher's delivery of a quitclaim deed to the parties' home, while section 9(B), which dealt with the sale of the salon property, included no provision concerning the time for performance.

¶10     Christopher requested that the court hold an evidentiary hearing concerning Rhonda's motion to dismiss. But the district court denied this request and also denied Rhonda's motion to dismiss. Eventually, a trial date was set. And at the ensuing bench trial,[3] at which both Christopher and Rhonda testified, the district

_____

3. With no transcript of the bench trial submitted by Christopher, we rely on the minutes of the proceedings found in the record. *Cf. In re A. Dean Harding Marital & Family Trust*, 2023 UT App 81, ¶ 85,

(continued…)

court granted Rhonda's motion for a directed verdict and dismissed the petition on the ground that Christopher had failed to provide sufficient evidence to support the petition.[4]

*The Motion to Enforce the Decree*

¶11 In July 2021, Christopher filed a motion to enforce the decree in a renewed effort to compel Rhonda's sale of the salon property. Christopher argued that under the principles articulated in *New York Avenue LLC v. Harrison*, 2016 UT App 240, 391 P.3d 268, *cert. denied*, 393 P.3d 283 (Utah 2017), the decree's lack of an "expressly-stated time[] for performance" signified that the court should impose a "reasonable time under the circumstances" by which Rhonda had to sell the property and that such a time had already passed. *See id.* ¶ 32 (quotation simplified).

¶12 In response, Rhonda argued that the motion to enforce was simply Christopher's attempt to get a "third bite at the apple." Similar to her response to the petition to modify, Rhonda argued that Christopher failed to present sufficient credible evidence to support his contention that the parties' intent was anything other than to afford Christopher his interest in the property when Rhonda sold it. She contended that because the salon on the property was her "sole source of income," the parties deliberately omitted any specific performance deadline, providing instead—and explicitly emphasizing—that Christopher would be entitled

---

536 P.3d 38 (stating that "when an appellant fails to provide an adequate record on appeal, we presume the regularity of the proceedings below") (quotation simplified).

4. In May 2021, Christopher appealed, requesting that this court review the dismissal of the petition to modify and "all subsidiary rulings and orders leading to final judgment," but he moved to voluntarily dismiss this appeal shortly thereafter, which motion this court granted.

to payment for his interest when, and only when, the property was sold. Rhonda asserted that it would therefore be inappropriate for the court to impose a reasonable time by which she had to sell the property when the decree's plain language was straightforward and explicitly did not include one.

¶13 In October 2021, Commissioner Russell Minas heard argument on the motion. The commissioner concluded that "[b]ecause there [was] no deadline provided by the parties, Utah law implies a reasonable time under the circumstances," *see id.*, which he determined to be "until [Rhonda] ceases to use the Property to operate a business." The commissioner thereafter issued his recommendation in the matter. *See* Utah R. Civ. P. 108(a) ("A recommendation of a court commissioner is the order of the court until modified by the court.").

¶14 Christopher subsequently filed an objection to the recommendation pursuant to rule 108 of the Utah Rules of Civil Procedure. *See id.* ("A party may file a written objection to the recommendation within 14 days after the recommendation is made in open court[.]"). Christopher acknowledged that the commissioner correctly determined that the reasonable-time rule articulated in *New York Avenue* applied to this case. But he challenged the commissioner's application of the rule. He argued that the "reasonable time under the circumstances is determined by looking to the intention of the parties at the time of the formation of the contract" and that in so doing, it is clear the reasonable-time threshold had already passed because neither the stipulation nor the decree intended for Rhonda "to retain the Property and all equity so long as she operated a business." Rhonda yielded to the commissioner's interpretation of a reasonable time, arguing that the commissioner correctly defined a reasonable time under all the circumstances.

¶15 The district court heard argument on Christopher's objection.[5] The court overruled Christopher's objection from the bench and modified the commissioner's recommendation. The court concluded that a reasonable time for performance should not be implied here because, per the language of the decree, Rhonda's deadline to sell the property was whenever she chose to sell it and that "it would be inappropriate for the Court to impose a date by which the Property must be sold."

¶16 Christopher appeals.

ISSUES AND STANDARDS OF REVIEW

¶17 Christopher primarily argues that the district court erred in concluding that the reasonable-time rule was inapplicable here. "We interpret a divorce decree according to established rules of contract interpretation." *Mitchell v. Mitchell*, 2011 UT App 41, ¶ 5, 248 P.3d 65 (quotation simplified), *cert. denied*, 255 P.3d 684 (Utah

---

5. As with the bench trial, Christopher did not request a transcript of this hearing and we therefore rely on the minutes of the proceedings found in the appellate record to understand what occurred during the hearing. *See supra* note 3. While it perhaps is not always necessary to include a transcript of hearings in the appellate record, we have previously determined that a transcript "is necessary in cases where the court issued an oral ruling at the conclusion of the hearing and where the court's eventual written order is silent with regard to the matter being challenged." *In re A. Dean Harding Marital & Family Trust*, 2023 UT App 81, ¶ 86, 536 P.3d 38. "In such cases, a transcript of the hearing is necessary for us to effectively review the challenged issue" because without it "we do not know what evidence or argument the court relied on in rendering any decision." *Id.* While we do have a spartan description of the hearing included in the court's minutes, which is not without utility, we discourage parties from relying wholly on the court's minutes when a transcript is readily available.

2011). Accordingly, we review the district court's interpretation of the decree for correctness. *See Mintz v. Mintz*, 2023 UT App 17, ¶ 14, 525 P.3d 534, *cert. denied*, 531 P.3d 730 (Utah 2023).

¶18     Christopher also argues that the court "exceeded the scope" of his objection when it addressed "matters not before the court." The scope of a court's review of a commissioner's recommendation turns on the correct interpretation of the applicable rule of civil procedure. *Cf. Zions Bancorporation, NA v. Schwab*, 2023 UT App 105, ¶ 12, 537 P.3d 273 (holding that the district court's "statutory interpretation" is reviewed "for correctness") (quotation simplified); *Bermes v. Summit County*, 2023 UT App 94, ¶ 28, 536 P.3d 111 (stating that a district court's "interpretation of a set of statues or ordinances" is reviewed "for correctness") (quotation simplified), *cert. denied*, 2023 WL 9058850 (Utah 2023).


## ANALYSIS

### I. Reasonable Time Under the Circumstances

¶19     Christopher first challenges the district court's conclusion that "it would be inappropriate for the Court to impose a date by which the property must be sold." He asserts that the court's conclusion is incorrect, that the reasonable-time rule is applicable here, that a reasonable time has long since elapsed, and that Rhonda should be compelled to sell the property and satisfy his equity interest. We determine that the district court's conclusion was incorrect and conclude that the reasonable-time rule is applicable in this matter. We then determine what constitutes a reasonable time for Rhonda's performance under the circumstances.

¶20     A stipulated divorce decree represents an enforceable contract between divorcing spouses, and so "we interpret the parties' decree according to established rules of contract

interpretation." *Thayer v. Thayer*, 2016 UT App 146, ¶ 17, 378 P.3d 1232 (quotation simplified). Of course, "the cardinal rule in contract interpretation is to give effect to the intentions of the parties as they are expressed in the plain language of the contract itself," and "we construe a contract to give effect to the object and purpose of the parties in making the agreement." *New York Avenue LLC v. Harrison*, 2016 UT App 240, ¶ 21, 391 P.3d 268 (quotation simplified), *cert. denied*, 393 P.3d 283 (Utah 2017). Key to the issue before us, our principles of contract interpretation further provide "that if a contract fails to specify a time of performance the law implies that it shall be done within a reasonable time under the circumstances," *id.* ¶ 32 (quotation simplified), which analysis entails a question of fact, *see iDrive Logistics LLC v. IntegraCore LLC*, 2018 UT App 40, ¶ 55, 424 P.3d 970, *cert. denied*, 425 P.3d 803 (Utah 2018).

¶21 The parties agree on the basic meaning of the terms contained in section 9(B) of the decree. They accept that under section 9(B), Rhonda was awarded ownership of the property, Christopher was required to "execute a quit claim deed" in Rhonda's favor while reserving for himself "an equitable lien for one-half of the net equity of the property when the property is sold," and that Christopher would "only be entitled to his equity when the property is sold." Further, both parties acknowledge that section 9(B) does not include a date by which the property was required to be sold. Based on this understanding, Christopher argues that the district court's conclusion was incorrect, that the reasonable-time rule does apply, and that Rhonda should be compelled to sell the property immediately, a reasonable time having long since come and gone, or else his interest "could remain trapped forever."

¶22 Christopher asserts that under our decision in *New York Avenue*, the district court should be required to apply the reasonable-time rule based on the reality that section 9(B) did not include a specified time of performance. In that case, a seller

contracted with a buyer for the sale of certain real estate. 2016 UT App 240, ¶ 3. Due to unforeseen complications, the transaction was not settled on the date intended by the contract. *Id.* ¶¶ 5–6. The buyer, still desiring to be bound by the terms of the contract, elected to begin making monthly settlement extension payments to the seller, as provided for in the contract, thus advancing the contract's intended settlement date to the last day of the month associated with the buyer's settlement extension payment. *Id.* ¶ 6. While the contract provided terms to extend the settlement date, it failed to specify a final date regarding the ultimate settlement of the contract or to define the maximum number of settlement extensions available to the parties. *Id.* ¶ 5. After numerous settlement extensions, the seller sought to terminate the contract. *Id.* ¶¶ 8–9. Following a summary judgment hearing, the district court determined that the contract entitled the buyer to extend the settlement deadline indefinitely, "so long as valid tender of the extension payment was made." *Id.* ¶ 12 (quotation simplified).

¶23 On appeal, we held, in relevant part, that because the contract did "not limit the number of extension payments," it did "not provide a date by which [seller] must perform its core obligation to complete the purchase of the Property." *Id.* ¶ 34. Accordingly, we noted "that if a contract fails to specify a time of performance the law implies that it shall be done within a reasonable time under the circumstances." *Id.* ¶ 32 (quotation simplified). And we concluded that the district court erred in granting summary judgment that countenanced an indefinite extension of the time for performance. *Id.* ¶¶ 29, 32.

¶24 Similar to the seller in *New York Avenue*, Christopher is concerned that if we conclude that the reasonable-time rule does not apply to section 9(B) of the decree, there exists a possibility that Rhonda could opt to never sell the property and thereby retain all of the equity indefinitely. In reviewing the conclusions of the court, we must evaluate the plain language of section 9(B)

of the decree to determine if the district court correctly held that the reasonable-time rule did not apply.

¶25 Based on the plain language of section 9(B), it is obvious that nowhere in its four sentences is there any provision regarding a specific date by which Rhonda must sell the property. Rhonda argues on appeal that it would be improper for the court to impose a reasonable time for performance because, unlike the contract at issue in *New York Avenue*, section 9(B) did not intend to "create an obligation" for the sale of the property. She further contends that sale of the property is a condition precedent, and thus, she is not required to sell the property but that if she does, Christopher would then be entitled to receive his share of the equity. We are not persuaded by Rhonda's argument. The intent of the decree was to "resolve all issues between" the parties. Therefore, while section 9(B) was not intended to be a sales agreement, it was also not intended to allow Rhonda to indefinitely prevent the satisfaction of Christopher's interest. *See Brady v. Park*, 2019 UT 16, ¶ 53, 445 P.3d 395 ("When we interpret a contract we first look at the plain language of the contract to determine the parties' meaning and intent.") (quotation simplified). Accordingly, we agree with Christopher that a reasonable time for performance should be implied. Thus, we conclude that the district court incorrectly determined that the reasonable-time rule was inapplicable here. We next determine what the reasonable time should be, and here we part ways with Christopher and endorse the view adopted by the commissioner.

¶26 Due to the nature of these proceedings and Christopher's decision not to request transcripts of the prior hearings, we are unable to consider the parties' presentations before the commissioner or the district court, including not only the arguments they made but also any evidence they introduced or evidentiary proffers they made. Even so, Christopher contends that "[a] reasonable time is defined by the parties' intentions at the time the contract is formed, not when the dispute arises," and

that because the parties did not intend for his interest to remain unsatisfied this long, a reasonable time has long since elapsed. Conversely, Rhonda contends that "[t]he language of the Decree demonstrates that the Parties intended for [her] to be able to operate her business from the Property to support herself indefinitely."

¶27    In consideration of what constitutes a reasonable time under the circumstances, we must discern the parties' intentions from the language of their contract—the stipulated decree—and the relevant circumstances, but in the absence of whatever evidence might have been adduced or proffered at the hearings as we have not been favored with the transcripts. We are mindful that neither party was awarded alimony in this case, meaning Rhonda's livelihood depended on her continued ability to operate her salon business. And it is significant that not only was no time for Rhonda's performance specified, but it was emphasized that Christopher shall be entitled to his equity only "when the property is sold." The conclusion is inescapable, as determined by the commissioner, that the intention of the parties, as reflected in the language they employed, was that Rhonda's obligation to sell the property and cash out Christopher would be triggered when she ceased to operate the salon business. That occurrence would equate to the reasonable time for her performance under the unique circumstances of this case.

## II. Scope of District Court Review

¶28    Christopher next challenges the district court's expansive consideration of the commissioner's recommendation, arguing that the court "exceeded the scope" of his objection by addressing "matters not before the court." We disagree with Christopher's position. A plain reading of rule 108(f) of the Utah Rules of Civil Procedure requires the district court to make "independent findings of fact and conclusions of law based on the evidence." And our jurisprudence makes clear that a district court has

plenary responsibility for "what is essentially its own order." *Somer v. Somer*, 2020 UT App 93, ¶ 12, 467 P.3d 924 (quotation simplified). Accordingly, we conclude that the court did not exceed the scope of its authority in reviewing the commissioner's recommendation without being confined to the contours of the objection made by Christopher.

¶29 "We interpret court rules, like statutes and administrative rules, according to their plain language." *Day v. Barnes*, 2018 UT App 143, ¶ 12, 427 P.3d 1272 (quotation simplified). Rule 108 provides a procedure by which a party may object to a commissioner's recommendation and request that the district court review the recommendation. Within this framework, subsection (a) first indicates that a commissioner's recommendation "is the order of the court until modified by the court" and that "[a] party *may* file a written objection to the recommendation." Utah R. Civ. P. 108(a) (emphasis added). Next, subsection (b) explains that any objection "must identify succinctly and with particularity the findings of fact, the conclusions of law, or the part of the recommendation to which the objection is made and state the relief sought," and it also provides that the accompanying memorandum of support "must explain succinctly and with particularity why the findings, conclusions, or recommendation are incorrect." *Id.* R. 108(b). Lastly, subsection (f) directs that "[t]he judge will make *independent* findings of fact and conclusions of law based on the evidence, whether by proffer, testimony or exhibit, presented to the judge, or, if there was no hearing before the judge, based on the evidence presented to the commissioner." *Id.* R. 108(f) (emphasis added). Thus, the plain language of the rule "does not provide for an appeal-like review of a commissioner's decision, but instead requires independent findings of fact and conclusions of law based on the evidence." *Day*, 2018 UT App 143, ¶ 16 (quotation simplified).

¶30 In the case at hand, after the commissioner made his recommendation, Christopher filed an objection wherein he explained that while the commissioner "correctly found" that the reasonable-time rule applied to section 9(B) of the decree, he erred because the recommendation was not based on evidence that, at the time the decree was entered, the parties intended that Rhonda would "retain the Property and all equity so long as she operated a business." After a hearing on Christopher's objection, the court modified the recommended order based on its independent determination that it would be "inappropriate" to apply the reasonable-time rule and "to impose a date by which the Property must be sold." Christopher now argues that the court's decision to modify the recommendation concerning the reasonable-time rule "exceeded the scope" of his objection because, as the objecting party, he "was entitled to define the scope of his objection, and he did so narrowly."

¶31 We reject this argument. As just explained, when faced with an objection to a commissioner's recommendation, the responsible district court judge is expected to make "*independent* findings of fact and conclusions of law based on the evidence." Utah R. Civ. P. 108(f) (emphasis added). We have previously explained that because a commissioner's recommendation is "the order of the district court until modified by that court," "it would make little sense that the district court would be limited in reviewing what is essentially its own order." *Day*, 2018 UT App 143, ¶ 18 (quotation simplified). Therefore, while rule 108 provides that the objecting party must proceed with "particularity" concerning the basis of the objection, Utah R. Civ. P. 108(b), that same particularity does not circumscribe the authority of the reviewing court and does not limit the reviewing court's ability to make its own findings and conclusions, *see id.* R. 108(f). Thus, notwithstanding Christopher's "narrowly" defined objection, the court's modification of the commissioner's recommendation did not exceed the appropriate scope of review

in a procedural sense, even though we conclude that the court's substantive conclusion was incorrect.

## CONCLUSION

¶32     The district court erred because the reasonable-time rule should have been applied in this case, and the reasonable time to be imputed is essentially the time as determined by the commissioner, namely when Rhonda ceases operating her salon on the property. We remand so the court can adjust its order accordingly. At the same time, we conclude that the court did not exceed the scope of its review authority under rule 108.

_____