## SALT LAKE CITY v. STATE.

No. 6376.   Decided May 10, 1942.   (125 P. 2d 790.)

See 19 Am. Jur., 545; 26 C. J. S., Deeds, sec. 152.

*Grover A. Giles,* Atty. Gen., *S. D. Huffaker,* Asst. Atty. Gen., and *A. John Brennan,* Deputy Atty. Gen., for appellant.

*E. R. Christensen, Gerald Irvine,* and *A. Pratt Kesler,* all of Salt Lake City, for respondent.

McDONOUGH, Justice.

This action was commenced in the District Court by Salt Lake City against the State of Utah to quiet title to a tract of land situated in said city at the head of State Street, just south of the State Capitol grounds. From a judgment quieting title in the City, the State has appealed.

It is undisputed that Salt Lake City was the owner in fee of the property here involved prior to July 5, 1895, at which time it conveyed the property to the Territory of Utah, the pertinent provisions of the deed being as follows:

"That whereas Salt Lake City a municipal corporation in the Territory of Utah the Grantor herein is the owner of the real estate and property hereinafter fully described and whereas, the said City has agreed to convey the said property to the Territory of Utah, on the conditions and for the purposes set forth in the following report of a special committee of said City Council, duly appointed by said Council and the action of said Council on said report, to wit:

"Your Special Committee to confer with the Governor and the Legislative Assembly to provide for the transfer of certain land to the Territory of Utah one acre of ground on the east side of State Street and immediately south of the Capitol Grounds and in such shape as may be acceptable to the Territory, *said ground to be used for the site of Executive Mansion.*

"We also recommend that the deed of said site carry with it the free use of City water for the grounds and Mansion.

\*       \*       \*

"AND WHEREAS: *the Legislative Assembly of the Territory of Utah adopted a joint resolution accepting the said property upon the conditions and for the purposes, as specified in the report* of the said Special Committee and the action of the City Council of said Salt Lake City on said report now therefore, in consideration of the premises, and the sum of One Dollar in hand paid by the said second party, the receipt whereof is hereby acknowledged; and by these presents *does grant, bargain, sell, convey and confirm* unto the said Territory of Utah, the party of the second part, the following described real estate and property, to wit:

"All of Lots eight (8) nine (9) and ten (10) in Block two, Plat "K" Salt Lake City Survey the same being situated and lying in Salt

Lake City, and County, Territory of Utah, and also a sufficient supply of water for use on said premises and any building or buildings that may hereafter be erected thereon free of cost to the party of the second part, so long as said premises shall be used for a mansion or residence by the Executive of said Territory, or the State of Utah.

"*But in case said property shall not be used by said Territory or State for an Executive Mansion or residence, then this deed shall become void and of no effect and said property with all improvements and appurtenances thereon or thereto belonging shall revert to and become the property of the said party as fully and absolutely as if this deed had not been made.* (Italics added.)

The Findings of the trial court which, in the absence of a bill of exceptions, must be taken as being supported by the evidence, are (as far as the same are pertinent here) :

"3. That the said defendant did on said day accept said deed and the real property therein upon the express limitation and qualification set out in said deed, that is, in the event that the property. described therein was not used by the defendant for an executive mansion or residence the said realty would revert to and become the property of the plaintiff herein.

"4. That the defendant State of Utah has not since the execution and delivery of said deed or at any time used the real property described therein for an executive mansion or residence and the same has been and now is vacant and unoccupied land.

"5. That the said defendant State of Utah pursuant to Chapter 151 of the Laws of Utah, 1937, an act of the Legislature of the State of Utah known as Senate Bill No. 236, approved and effective February 24, 1937, did accept a parcel of land conveyed by deed from Jennie J. Kearns to the said defendant State of Utah, which conveyance was dated April 28, 1937, and recorded in the office of the County Recorder of Salt Lake County in Book 198 of Deeds, pages 470-1, upon which land there existed a residence for the express purpose of using the same as the residence of the Governor of the State of Utah, and since said time said residence and real property have been and are now used by the defendant State of Utah as the executive mansion or residence of the Governor of said State.

"6. That the said defendant State of Utah abandoned the use of said real property conveyed to it by Salt Lake City for an executive mansion or residence as aforesaid and by the acceptance of the said real property conveyed to it by Jennie J. Kearns as aforesaid and the

use by the State of Utah as its executive mansion or residence for its Governor did terminate its fee in the deed conveying the real property from Salt Lake City plaintiff to the State of Utah as aforesaid."

Assuming the above to be all findings of ultimate facts, the only conclusion which could be reached in this case would be that title had reverted to respondent city. But Finding No. 6—which is assailed by appellant—is a conclusion of law to the extent that it states that the acceptance of the Kearns property by the State "as its executive mansion for its Governor did terminate its fee in the deed," etc. Also the first part of said Finding to the effect that the State "abandoned the use of said real property conveyed to it by Salt Lake City for an executive mansion" involves a conclusion of law.

As to Finding No. 3, if it is intended thereby to interpret the restrictive covenant contained in the deed—the interpretation being that the grantee (State of Utah) would have to make an affirmative use of the premises for a Governor's mansion—then it, to that extent, is a legal conclusion as to the nature of the covenant.

But our examination of the deed compels the same conclusion as to the nature and extent of the title which vested in the State by virtue of the conveyance. Considering the interest or estate conveyed in said deed as being a fee simple determinable (see: Restatement of the Law of Property, Vol. 1, Sec. 44, and illustrations given therein), we must conclude that the contingency which would work a reversion has taken place. That contingency, as a matter of law, occurred when the State of Utah failed to make use of said premises as a residence for the governor within a reasonable time after the conveyance. And this factor of failure to use the premises for a governor's mansion within a reasonable time, coupled with the further fact that another residence for the governor was accepted and used, justifies the conclusion reached by the trial court that title to the land "has reverted to and become the property of Salt Lake City."

The case of *Norton* v. *Valentine,* 151 App. Div. 392, 135 N. Y. S. 1084, is a case quite similar to the one before us. There the deed conveyed certain property to defendant's predecessor:

"To have and to hold the above granted premises unto the said party * * * his heirs and assigns forever, for the use and purpose of a free gospel tabernacle and pastor's residence, and for no other purpose; provided always and these presents are upon this express condition, that the said land shall be only used for a free gospel tabernacle and pastor's residence, and in case the said land or any part thereof shall be used for any purpose other than as above stated (that is to say, for a free gospel tabernacle and pastor's residence) then and in that case the grant hereby made shall be and become void and the said land shall revert to, and belong to, the said party of the first part, his heirs and assigns as though this grant had not been made."

For 17 years the premises remained unoccupied without the erection or any movement towards the erection of a gospel tabernacle and pastor's residence. The Court, in determining that there had been a forfeiture, said:

"The authorities are uniform to the effect that the condition of the deed is a condition subsequent, that no formal demand of performance is required, and that the failure to perform the condition by the grantee within a reasonable time works a forfeiture. See *Hosford* v. *Ballard,* 39 N. Y. 147; *Plumb* v. *Tubbs,* 41 N. Y. 442; *Upington* v. *Corrigan,* 151 N. Y. 143, 45 N. E. 359, 37 L. R. A. 794; *Trustees of Union College* v. *City of New York,* 173 N. Y. 38, 65 N. E. 853, 93 Am. St. Rep. 569."

In the last cited case, *Trustees of Union College* v. *City of New York,* the deed contained the following restriction:

"Said plot of land is to be used by said Long Island City for the purpose of building a city hall thereon, and this conveyance is made upon the express condition that in case the said plot of ground above described shall ever cease to be used by said Long Island City for a city hall, or other similar city buildings, then and in that case the said plot of land shall revert back to the parties hereto of the first part as if this conveyance had not been made."

There was nothing done with the property for a period of 25 years when an action in ejectment was commenced against the city to recover possession of the premises. The city in that case raised the same objection to the claim of forfeiture as appellant raises in the instant case. But the court there said:

"The appellant argues that the condition of the conveyance upon which the land should revert back was, if it 'shall ever cease to be used by said Long Island City for a city hall, or other similar city buildings'; and as no building was, in fact, erected, the condition did not arise. I see no force in the argument. The whole language in which the condition is expressed must be considered, and then it becomes quite apparent that the condition of the conveyance, which the grantee accepted, was that a city hall, or building, was to be erected, and that, if the land should ever cease to be used for such purposes, the land should revert to the grantor. The condition was the use, and the continuing use, of the land for the purpose of the grant. The long-continued silence of the plaintiff could not operate as an estoppel upon or preclude it from insisting upon a forfeiture, and from claiming possession of the premises. The effect of an express condition in a deed cannot be destroyed by silent acquiescence. *Jackson* v. *Chrysler,* 1 Johns. Cas. 125. The title to the property was vested in the grantee, and the plaintiff was entitled to assume that its grantee would comply with the condition of the grant. If it elected to await compliance as long as it did, that fact cannot be construed against its right to reclaim possession."

The fact that the restrictive clause in the above case stated that a city hall was to be erected while there is no statement in the instant case that a governor's residence be erected is immaterial. The only way the premises here involved could be used as a governor's residence would be by building one thereon. The duty to erect a residence was just as positive as in the Trustees of Union College v. City of New York case. See *Norton* v. *Valentine,* supra.

The rule is well stated in *Nolfe* v. *Byrne,* 142 Tenn. 309, 219 S. W. 1, 3, as follows:

"It has often been held that a failure of the grantee of a deed to comply with a condition subsequent for such a length of time, as it

appears from the bill has elapsed here, is sufficient to forfeit the estate. *Upington* v. *Archbishop Corrigan*, 151 N. Y. 143, 45 N. E. 359, 37 L. R. A. 794; *Hayden* v. *Stoughton*, 5 Pick., Mass., 528; *Austin* v. *Cambridgeport Parish*, 21 Pick., Mass., 215.

"When an estate is conveyed on condition and no time is limited in which the condition is to be performed, it must be performed within a reasonable time. *Murdock* v. *Mayor & Aldermen of Memphis*, supra [47 Cold., Tenn., 483]."

In *McKee* v. *Club-View Heights*, 230 Ala. 652, 162 So. 671, 674, the court in laying down the same rule and suggesting criteria for its application said:

"It is familiar law, that where a contract or conveyance expresses no time for the performance of an act contemplated by such contract or conveyance, a reasonable time is implied. What constitutes a reasonable time depends upon the subject-matter, the nature of the act to be performed, and the situation of the parties. If the facts are undisputed, the question is one of law for the court. If the facts are in dispute and the question rests in inference, it is one of fact. *Burton* v. *Steverson*, 206 Ala. 508, 91 So. 74; *Pratt Consolidated Coal Company* v. *Short et al.*, 191 Ala. 378, 68 So. 63; *Gorman-Gammill Seed & Dairy Supply Co.* v. *Carlisle*, 220 Ala. 116, 124 So. 288; *St. Mary's Oil Engine Co.* v. *Jackson Ice & Fuel Co.*, 224 Ala. 152, 138 So. 834; 6 R. C. L. p. 896, § 283; 3 Perm. Supp. R. C. L. page 1582, § 283; 13 C. J. page 683, § 776, Note 1, where Alabama cases are collected; *Black & Yates, Inc.*, v. *Negros-Philippine Lumber Company*, 32 Wyo. 248, 231 P. 398, 37 A. L. R. 1487."

In the case of *City of New York* v. *Coney Island Fire Dept.*, 170 Misc. 787, 10 N. Y. S. 2d 164, affirmed 259 App. Div. 286, 18 N. Y. S. 2d 923, a grant was conditioned on the contingency that the premises conveyed be used for fire purpose and for none other. Certain buildings were erected and the property was used as required for a number of years. Subsequently the use was discontinued and the buildings removed. The property then remained idle for several years before the action was brought. The court held that the condition was breached

"because of the continued failure of the defendant since 1897 or 1898 to devote the premises to the prescribed fire purpose."

In the case of *Estes* v. *Muskegon County Agricultural & Driving Park Ass'n,* 181 Mich. 71, 147 N. W. 553, 554, the question was raised whether there had been an abandonment of the premises. The deed provided:

"Said land to be used for the purposes of fair grounds and driving park and for no other purpose, and to revert to said first parties, their heirs and assigns when abandoned by said second party for the purpose aforesaid."

The court, holding that there had been an abandonment by failure for several years to use the premises for the purpose required, said:

"It is undoubtedly true, as is contended by defendant, that mere lapse of time, mere failure to use the premises, is not, in most cases, conclusive evidence of abandonment or of an intention to abandon. But mere lapse of time, mere failure to use, may be of more significance in one case than in another. Plaintiff's case does not rest upon lapse of time merely, but upon the failure of a corporation grantee (a corporation existing for the purpose of the designated use, a corporation organized to use the premises for definite purposes) to exercise for years its franchise, to use them at all for the purposes of its existence, which are the identical purposes stated in the conditional grant of the lands."

In *Papst* v. *Hamilton,* 133 Cal. 631, 66 P. 10, the land was conveyed

"upon the conditions, however, that the premises shall be used solely for the purpose of erecting, furnishing, keeping, and maintaining thereon an academic or collegiate school for the purpose of educating the young people and students in the higher as well as more common and useful branches of education, and for a residence or residences thereon for the professors or teachers, and students of the said institution while engaged in their duties therein, and for no other purpose whatever."

The Supreme Court of California affirmed a judgment based on the complaint which alleged:

"* * * that for more than five years last past the said grantees in the said deed, or their successors have failed and neglected to use the premises described in the said deed for the purpose or any of the

purposes above specified as a consideration for the said deed, and have entirely abandoned the said premises * * *."

On the general subject here involved, see Thompson on Real Property, Perm. Ed. Vol. 4, Chapter 30, Secs. 2096 to 2112.

It may well be conceded in this case that at the time of the conveyance it was not contemplated that a governor's residence should be erected for some years to come. The conveyance was doubtless made in anticipation of statehood. Its date is just two months after the conclusion of the labors of the Constitutional Convention and six months before statehood. The proposed Constitution fixed the seat of government at Salt Lake City. That some years might elapse before the specified use was made of the land conveyed may well be presumed. It may further be conceded that the mere expiration of a period of time of non-user equal to that in some of the cases cited would be insufficient to justify a conclusion that the estate had terminated. As stated in *McKee* v. *Club-View Heights,* supra, the subject matter, the nature of the act to be performed, and the situation of the parties must be considered in determining whether time and circumstances have worked a termination.

Nevertheless, we are of the opinion that the expiration of more than 45 years after the date of the grant and more than 25 years after the erection of a state capitol on the grounds near by, plus the acceptance by the legislature of the Jennie J. Kearns grant of land and residence for use as a governor's residence, and the use and maintenance thereof for that purpose for several years, adequately support the court's conclusion that the estate granted had terminated.

The judgment is consequently affirmed. Costs to respondent.

MOFFAT, C. J., and LARSON and PRATT, JJ., concur.

WOLFE, J., not participating.