**2016 UT App 240**

## THE UTAH COURT OF APPEALS

NEW YORK AVE. LLC,
Appellee and Cross-appellant,

*v.*

DAVID D. HARRISON AND JAN C. HARRISON,
Appellants and Cross-appellees.

Opinion
No. 20140719-CA
Filed December 8, 2016

Fourth District Court, Provo Department
The Honorable David N. Mortensen
No. 090402295

Jason D. Boren, Emily L. Wegener, and Jackie
Bosshardt, Attorneys for Appellants
and Cross-appellees

David D. Jeffs and Kevin D. Jeffs, Attorneys for
Appellee and Cross-appellant

JUDGE STEPHEN L. ROTH authored this Opinion, in which SENIOR
JUDGE PAMELA T. GREENWOOD concurred.[1] JUDGE GREGORY K.
ORME concurred in the result, with opinion.

ROTH, Judge:

¶1     New York Ave. LLC (NYA) entered into a real estate
purchase contract to purchase twenty acres of undeveloped land
from Defendants David D. and Jan C. Harrison (the Harrisons).
The contract provided NYA sole discretion to extend the closing
by paying a monthly extension payment, which NYA paid

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

monthly for nearly two years beyond the agreed-upon settlement deadline. Eventually, the Harrisons informed NYA that it was in breach of contract for failing to close within a reasonable time and proposed a firm closing date some months later. NYA asserted that the Harrisons had breached the contract by demanding that NYA close the purchase in derogation of its right to extend. This case ensued, with the parties asking the court, among other things, to interpret the contract and determine whether either party had breached it. In addition, during the litigation, the Harrisons refused to accept NYA's tender of an extension payment, claiming that it was conditional. NYA then asserted that the Harrisons' refusal of the tender was itself a breach of the contract.

¶2 The district court granted partial summary judgment in NYA's favor, concluding that NYA had unlimited discretion under the contract to extend the settlement deadline, that NYA had not breached the contract by failing to close, and that the Harrisons had breached the contract by failing to accept the tendered extension payment. The court subsequently granted partial summary judgment in the Harrisons' favor on the issue of damages, limiting NYA to actual rather than liquidated damages, and limiting NYA's recovery of attorney fees. Each side appeals the district court's ruling. We reverse and remand for further proceedings.

BACKGROUND

¶3 The Harrisons own over twenty acres of undeveloped real property (the Property) in Springville, Utah. Hoping to fund their retirement, in November 2006 the Harrisons entered into a real estate purchase contract with NYA, which planned a residential development. NYA agreed to purchase the Property for $3 million, with an earnest money deposit of $10,000. The parties executed two addenda to the contract—Addendum 1, signed along with the contract itself on November 10, 2006, and

Addendum 2, signed on November 22, 2006. The real estate purchase contract and the two addenda form the complete contract between the parties (together, the REPC),[2] which became effective with the signing of Addendum 2.

¶4 Under the REPC, the Harrisons were required to provide Seller Disclosures to NYA within fourteen days of the "fully executed contract," including a "property condition disclosure," "a copy of any leases affecting the Property," and "evidence of any water rights and/or water shares." NYA then had the right to cancel the REPC, in the event of any one of a number of contingencies, no later than the "Due Diligence Deadline," specified as "90 days from date of the fully executed contract." If NYA did not cancel the contract or deliver written objections by the deadline, NYA would "be deemed to have approved the Property" and any contingencies to the enforceability of the REPC would be "deemed waived." The Harrisons agreed that between acceptance of the REPC and closing they would not, without the "prior written consent" of NYA, modify any existing leases or enter into any new ones, make "substantial alterations or improvements to the Property," or further encumber the Property financially. They also agreed to continue to cover any costs or expenses associated with the Property during that time, such as taxes, assessments, and utilities. The REPC provided that "time is of the essence" and that "performance under each Section . . . which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date[s]."

¶5 Of particular importance to this appeal are the provisions governing the Settlement Deadline, the date by which the parties were to be prepared to complete the sale and finalize purchase of the Property. Addendum 1 provided that the Settlement

---

2. Except where the context indicates otherwise, we refer to the complete agreement as the REPC.

Deadline was "to be 180 days from the date of the fully executed contract" (i.e., 180 days from November 22, 2006). Central to this appeal, the REPC also provided that NYA "may choose, at [its] sole discretion, to pay an additional amount of non-refundable earnest money to continue the contract monthly after the settlement deadline" and that any such payment would "be a credit towards the purchase price at closing." Initially, the monthly extension payment was set at $12,500. However, Addendum 2 altered the details of the settlement extension provision by lowering the monthly extension payment to $6,250 and moving the initial Settlement Deadline "until after the harvest season 2007 which will be October 31, 2007." The REPC did not specify any limit on the number of times NYA could extend the Settlement Deadline.

¶6     In January 2007, NYA informed the Harrisons that it had encountered a problem connecting the Property to the Springville City sewer system. As a result, NYA stated that it would not "be able to develop the property until mid-2008 at the earliest." NYA also indicated that, in spite of the logistical problem, it still "want[ed] to continue the contract as it [was] currently written" and that on October 31, 2007, it would "start making the monthly [settlement extension] payments . . . until [it] close[d] on the property, which [would] be when the sewer trunk line [was] installed and [it] [could] get the necessary approvals from the city to develop." In September 2007, NYA sent another letter to the Harrisons, notifying them that it had found a potential work-around to the sewer line issue and again stating that it would begin making the settlement extension payments in October, which it did.

¶7     In early 2008, Springville City denied NYA's proposed sewer line alternative. At that point, NYA deemed that it "had exhausted all [its] options" and that it was "through working on [developing the Property] until the sewer was available." NYA

continued to make settlement extension payments throughout 2008 and into the summer of 2009.

¶8     In the summer of 2008, however, the Harrisons informed NYA that they did not want to wait any longer to close on the Property, and in December the parties began discussions about options for terminating the contract. They did not reach a resolution, and in March 2009, the Harrisons' attorney sent a letter to NYA asserting that even though the REPC did not contain an "outside Settlement Date," it was "unreasonable to interpret the extension provision in the REPC as allowing the Buyer to extend the Settlement indefinitely." Rather, according to counsel, "when a contract fails to specify a time by which a certain act must be performed, [the] law implies that the act must be done within a reasonable time under the circumstances," and, as it had been over sixteen months "since the original Settlement Deadline, . . . any reasonable time for closing ha[d] already passed." The letter explained that, while the Harrisons viewed NYA's "failure to close as a breach of the implied covenant of good faith and fair dealing," they were still "willing to close on or before August 5, 2009." The Harrisons requested that NYA contact them to discuss a final Settlement Deadline.

¶9     In June 2009, NYA sued the Harrisons for rescission, breach of contract, and a declaratory judgment regarding the obligations of both parties under the REPC. The Harrisons counterclaimed for breach of contract and breach of the covenant of good faith and fair dealing, claiming that NYA had failed to close on the purchase of the Property within a reasonable time. NYA continued to make extension payments in June and July 2009, which the Harrisons accepted.

¶10    On August 31, 2009, the last day of the then-current extension, NYA's counsel sent the Harrisons another extension payment along with a letter that, among other things, explained

in some detail NYA's understanding of the REPC. Specifically, NYA explained that the agreement to purchase the Property had been "based on the assumption that it could be developed as single family residential that would maximize the development potential of the land" and stated that "[t]he ability to postpone closing on the property until it could be developed to its maximum potential was crucial to [NYA]." NYA asserted that "[w]ith the lack of sewer capabilities, and through further information . . . that showed insufficient storm drainage capacity, the property could not (at the time) be developed to its maximum potential." And according to NYA, the Settlement Deadline could be extended at its option "to allow for the property to be developed to its full potential," including "sewer line extension installed to the property, storm drainage readily available, and [the] property being economically feasible to develop under zoning ordinances of Springville [C]ity and existing market conditions." The letter then stated,

> By negotiating this $6,250 check, you are agreeing with my client that it is entitled under the REPC to make these payments in order to postpone closing in accordance with the express terms of the REPC until it is economically feasible to move forward with a residential development of the property . . . .

¶11 The Harrisons refused to accept the August 2009 extension payment, informing NYA that they considered NYA's letter and the payment to be an "attempt to modify the terms of the [REPC]" by conditioning the negotiation of the check on NYA's "unilateral and unexpressed intentions and 'understandings.'" Nonetheless, the Harrisons' letter also advised NYA that even though the tendered payment was being returned, the Harrisons would "continue to accept monthly payments so long as [NYA] withdr[ew] [its] inappropriate conditions." NYA made no further extension payments.

¶12    Both parties moved for summary judgment on the issue of liability for breach of contract. On June 14, 2012, the district court granted partial summary judgment in NYA's favor and denied the Harrisons' cross-motion. The court determined, among other things, that the unambiguous terms of the contract entitled NYA to extend the Settlement Deadline "so long as valid tender of the extension payment was made" and that the August 31, 2009 letter and check constituted a valid tender that the Harrisons were required to accept. The court concluded that the Harrisons breached the REPC by refusing to accept NYA's tender of the extension payment.[3] NYA subsequently filed a motion for summary judgment on the issues of damages and attorney fees, which the district court partially granted. The court determined that under the default provision of the REPC, NYA had failed to elect liquidated damages and had instead, "by virtue of litigating the matter up to the threshold of trial," elected to "pursue other remedies available at law," namely, actual damages. It also awarded NYA prejudgment interest from the date of the Harrisons' breach in 2009 and granted NYA's request for attorney fees, but it reduced the fee award on the basis that some of the requested fees were unreasonable. The total judgment awarded to NYA was $286,495.75, which included damages, prejudgment interest, attorney fees, and court costs.

¶13    The Harrisons appeal the district court's summary judgment ruling finding them in breach of contract, and NYA cross-appeals the district court's summary judgment ruling regarding damages and fees.

---

3. The district court also determined that the Harrisons had not anticipatorily breached when they had asserted in March 2009 that NYA was in default and demanded that closing occur on or before August 5, 2009. Neither party appeals this ruling.

ISSUES

¶14 The Harrisons argue, in essence, that the district court erred in two respects. First, the Harrisons assert that the court wrongly interpreted the REPC to allow NYA to exercise its discretion to extend the closing indefinitely rather than closing the purchase within a reasonable time.[4] Second, they claim the court erred when it determined that NYA's August 31, 2009 payment was a valid tender and argue that NYA breached the REPC by failing to close on the purchase of the Property after its conditional attempt to extend the Settlement Deadline failed.

¶15 In the cross-appeal, NYA argues that while the district court correctly ruled that the Harrisons breached the REPC by failing to accept the August 2009 extension payment, the court erred in determining that NYA elected to pursue actual damages rather than liquidated damages, in reducing NYA's attorney fees, and in running prejudgment interest from the date of the Harrisons' breach in 2009 rather than from the date of each extension payment.

¶16 Because resolution of NYA's cross-appeal necessarily depends on our resolution of the Harrisons' appeal, we first consider whether the district court erred in determining that the Harrisons breached the REPC. We begin by addressing whether the district court erred in concluding that the REPC permitted NYA to indefinitely extend the closing date for purchase of the

---

4. The Harrisons also assert that NYA breached the covenant of good faith and fair dealing through its repeated extensions of the settlement, because by continuing to extend the settlement NYA exercised its discretion in a way that deprived them of the benefit of their bargain. However, as explained below, *see infra* ¶ 54, we do not reach this argument.

Property and then address the effect of NYA's August 2009 tender of the extension payment.

ANALYSIS

I. Reasonable Time for Performance

¶17    The central contention on appeal is whether the REPC's provision that allowed NYA to "choose, at [its] sole discretion," to extend the Settlement Deadline on a monthly basis permitted NYA to extend the closing date indefinitely. If the REPC cannot be interpreted to permit NYA to extend the closing date indefinitely, then the question becomes whether a reasonable time to close the purchase can be implied.

¶18    The district court concluded that the REPC "does not expressly limit the number of extension payments . . . so long as the $6,250 extension payment is timely made," noting that "the number of times that the extensions payment may be made . . . is in NYA's sole discretion." The court also concluded that the REPC included a specific time for performance; it noted that "the parties explicitly agreed . . . that the settlement deadline would be October 31, 2007" and that the parties had also agreed that NYA could make a monthly payment to extend "the settlement deadline to the end of the following month." Thus, the court reasoned that under the terms of the REPC, the settlement would either be October 31, 2007, the baseline Settlement Deadline, or at the end of the last month thereafter for which NYA paid an extension fee. The court concluded that "[p]lacing a limit on the number of extension payments allowed would be reforming the contract and thereby rewriting the parties' agreement." On that basis, it denied the Harrisons' motion for summary judgment on their claims of breach and instead concluded that the Harrisons had breached the REPC.

¶19 The Harrisons argue that the district court erred by concluding that the REPC provided NYA the right to "extend the closing deadline indefinitely by making an Extension Payment," because that interpretation permitted NYA to "exercise its discretion in a way that deprived the Harrisons of the benefit of the parties' bargain—the sale of the Property." Specifically, the Harrisons contend that interpreting the REPC to permit NYA absolute discretion to extend the closing indefinitely would, taken to its logical conclusion, allow "NYA to pay $6,250 per month interest-free until it pa[id] off the Property in approximately forty years." (Emphasis omitted.) In essence, the Harrisons assert that it would turn the purchase contract into an "indefinite-term option contract" or "interest-free seller-financed purchase," and that "such an interpretation [was] far outside the contemplation of the parties when they entered the REPC."

¶20 The Harrisons also argue that the court erred in concluding that the contract included a definite closing date. According to the Harrisons, even though the REPC provided that settlement would take place on October 31, 2007, or at the end of the last month that NYA paid an extension fee, the REPC did not "include the essential term of how many extensions are permitted under the contract"; consequently, the contract provided no definite time for closing. Thus, they assert, the court should have implied a reasonable one.

A.    NYA's Discretion To Extend the Closing

¶21 The "cardinal rule" in contract interpretation "is to give effect to the intentions of the parties" as they are expressed in the plain language of the "contract itself." *G.G.A., Inc. v. Leventis*, 773 P.2d 841, 845 (Utah Ct. App. 1989); *see also Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 2011 UT 49, ¶ 13, 266 P.3d 733. In this regard, we construe a contract to give effect to the "object and purpose of the parties in making the agreement."

*Anderson v. Great E. Cas. Co.*, 168 P. 966, 968 (Utah 1917) (citation and internal quotation marks omitted). "A construction which contradicts the general purpose of the contract . . . is presumed to be unintended by the parties." *Home Sav. & Loan v. Aetna Cas. & Sur. Co.*, 817 P.2d 341, 366 (Utah Ct. App. 1991) (omission in original) (citation and internal quotation marks omitted); *see also* Restatement (Second) of Contracts § 202(1) (Am. Law Inst. 1981) (stating that "if the principal purpose of the parties is ascertainable it is given great weight"). And with the principal purpose in mind, we also interpret the contract as a whole, *see Aetna*, 817 P.2d at 367, "consider[ing] each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none," *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134 (omission in original) (citation and internal quotation marks omitted).

¶22    In this case, neither party disputes that the overarching purpose of the REPC was the purchase of the Harrisons' property by NYA. As NYA notes, "NYA, as buyer, and Harrisons, as sellers, entered into [the REPC] to purchase 20.27 acres of real property located in Springville, Utah." Fundamentally, the REPC was designed to enable the Harrisons to convey the Property to NYA in exchange for $3 million. Indeed, even the title of the REPC—Real Estate Purchase Contract For Land—clearly expresses this objective. To enable that central goal, the REPC obligated NYA to timely settle and close the purchase. To that end, the REPC provided deadlines for the three major events tracing the path toward consummation of the contract—Seller Disclosures, Due Diligence, and Settlement Deadline. In particular, following the Seller Disclosures, the REPC provided that the Property would "be deemed approved" by NYA and "the contingencies referenced [earlier in the agreement], including but not limited to any financing contingency, shall be deemed waived by [NYA]" unless NYA canceled or objected to the contract before the Due Diligence Deadline. Thereafter, the purchase was to be completed "on the

Settlement Deadline . . . or on a date upon which the Buyer and Seller agree to in writing." In other words, once the Due Diligence Deadline passed, NYA became unconditionally obligated to purchase the Property for the agreed-upon price, an obligation that could only be fulfilled by proceeding to closing of the purchase by paying $3 million to the Harrisons in exchange for an appropriate conveyance. Thus, before the Due Diligence Deadline, NYA's obligation to purchase the Property was essentially contingent, but once that deadline passed, the obligation became contractually absolute.

¶23 Viewed in this light, NYA's option to extend the Settlement Deadline from month to month at its discretion must be read as a grant of discretion subsidiary to, and not ultimately in derogation of, NYA's primary obligation to complete the purchase of the Property by paying the purchase price to the Harrisons. In other words, the extension provision necessarily contemplates that closing of the purchase will occur, a purpose that would at some point be essentially abrogated if the Settlement Deadline could be postponed indefinitely based only upon NYA's shifting development timeline. At some point, as that timeline extended month after month and year after year, the core purpose of the REPC, which from the Harrisons' perspective was to receive the purchase price in a lump sum in return for conveyance of the Property, would have been defeated and the contract would have transformed into a long-term, interest-free seller financing arrangement.

¶24 And the provisions of the REPC read as a whole support the conclusion that NYA's discretion to extend the Settlement Deadline was not unbounded. For example, the two addenda addressed NYA's fundamental obligation to close the Property purchase by clarifying certain of the REPC's provisions. As we have discussed, Addendum 1, among other things, provided specific deadlines for each of the three major contractual events the REPC outlined—Seller Disclosure, Due Diligence, and

Settlement Deadline. In particular, the Settlement Deadline was "to be 180 days from the date of the fully executed contract," which was November 22, 2006. Addendum 2 likewise dealt with contractually important dates; it extended the Settlement Deadline to a different date certain, "until . . . October 31, 2007." And while Addendum 1 included the proviso that NYA, "at [its] sole discretion, [may choose] to pay an additional amount of non-refundable earnest money to continue the contract monthly after the settlement deadline," the language of the proviso tethered the extension payments to the actual closing of the purchase: the "additional money . . . will be a credit towards the purchase price *at closing.*" (Emphasis added.) In other words, for the extension payments to become what the language of the contract affirms that they were meant to be—payments part and parcel of and counted toward the ultimate purchase price—the closing of the purchase needed to occur. Thus, while the language of the extension provision itself was tied only to NYA's discretion and was therefore nominally open-ended, by specifying one date certain after another as the Settlement Deadline—with extensions limited to one month at a time—the structure of the contract suggests that the parties did not contemplate that the closing date would extend indefinitely.

¶25    In addition, the plain language of the extension provision itself, when compared to other provisions of the contract, suggests that the provision was intended to support the transactional purpose of the REPC, not to permit NYA to abrogate the contract's purpose through endlessly repeated postponements of the closing. Each of the three major events along the timeline leading to closing—Seller Disclosures, Due Diligence, and Settlement Deadline—is articulated in mandatory language; each states that either the Buyer or the Seller "shall" perform some action. For example, the REPC provides that "[n]o later than the Seller Disclosure Deadline . . . , Seller shall provide to Buyer . . . the 'Seller Disclosures'"; that "[n]o later than the Due Diligence Deadline . . . Buyer shall: (a) complete all of

Buyer's Due Diligence, and (b) determine if the results of Buyer's Due Diligence are acceptable to Buyer"; and that "Settlement shall take place on the Settlement Deadline . . . or on a date upon which Buyer and Seller agree in writing." *See Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 27, 367 P.3d 994 (noting in the context of interpreting the "plain and ordinary meaning" of terms in a contract that the word "shall," as defined in Black's Law Dictionary, means "'a duty to,' 'is required to,' or 'mandatory'" (quoting *Shall*, Black's Law Dictionary (9th ed. 2009)); *see also Board of Educ. of Granite School Dist. v. Salt Lake County*, 659 P.2d 1030, 1035 (Utah 1983) (explaining that the word "shall" is "usually presumed mandatory"); *Kennecott Copper Corp. v. Salt Lake County*, 575 P.2d 705, 706 (Utah 1978) (noting that mandatory directions involve "the essence of the thing to be done"); *cf. Southwick v. Southwick*, 2011 UT App 222, ¶ 13, 259 P.3d 1071 (noting in the context of statutes that "[f]actors to be considered in [the] determination [of whether a provision is mandatory] include whether the provision affects substantial rights and whether the provision is necessary to effectuate the [legislature's] intent").

¶26    Here, each event—the Seller Disclosures, Due Diligence Deadline, and Settlement Deadline—was designed to propel the parties along a path that incrementally satisfied conditions of performance. In contrast, the language of the extension provision suggests that the occurrence of an extension is not part of the "essence" of the contract. *See Kennecott Copper Corp.*, 575 P.2d at 706 ("Generally those directions which are not of the essence of the thing to be done, . . . and by the failure to obey no prejudice will occur to those whose rights are protected . . . , are not commonly considered mandatory."). Rather than creating a certain performance obligation for either party, the extension provision merely provides that NYA "*may* choose, at [its] sole discretion, to pay an additional amount of non-refundable earnest money to continue the contract monthly after the settlement deadline." (Emphasis added.) *See May*, Black's Law

Dictionary (10th ed. 2014) (defining "may" as "[t]o be permitted to" and "[t]o be a possibility"); *cf. Neff v. Neff*, 2011 UT 6, ¶ 67, 247 P.3d 380 (noting in a statutory context that the word "may" connotes discretion). At the very least, the inclusion of the word "may" suggests that neither party intended the extension provision to override the contract's mandatory obligations—that is, if NYA never exercised its discretion to extend the settlement, the core obligations contained in the REPC, consummating the sale and purchase of the Property, would remain in force.

¶27    Thus, even though the parties disagree on the legal effect of NYA's discretion to extend the closing, it is clear from the language of the contract as a whole that the REPC's primary purpose was to sell the Property to NYA and that NYA's obligation to complete the purchase of the Property became unconditional once NYA allowed the Due Diligence Deadline to pass without exercising its right to cancel. As a result, NYA was obligated to close the purchase of the Property regardless of whether it exercised its discretion to extend the closing or not. *See Home Sav. & Loan v. Aetna Cas. & Sur. Co.*, 817 P.2d 341, 366–67 (Utah Ct. App. 1991) (explaining that "[a] construction which contradicts the general purpose of the contract . . . is presumed to be unintended by the parties" (omission in original) (citation and internal quotation marks omitted)). It necessarily follows that, while NYA could defer the closing on a month-to-month basis, it could not do so indefinitely, because unlimited extensions could ultimately permit NYA to defeat the primary purpose of the REPC.

¶28    In so concluding, we acknowledge that the parties negotiated NYA's discretion to extend the closing and that, by agreeing to it, both parties undoubtedly contemplated that extension of the closing for some period of time beyond the October 31, 2007 Settlement Deadline was allowable. But while NYA was provided "sole discretion" to decide whether to extend the closing, interpreting the REPC to allow NYA to

extend closing indefinitely improperly permits NYA to "use[] its discretion for a reason . . . beyond the risks assumed by the party claiming the breach." *See Markham v. Bradley*, 2007 UT App 379, ¶ 34, 173 P.3d 865 (emphasis omitted) (citation and internal quotation marks omitted). Nowhere in the contract did the parties manifest an agreement that would permit NYA to unilaterally alter the fundamental nature of the contract, not to mention its actual value, by indefinitely postponing its obligation to close on the purchase of the Property. Indeed, such an interpretation could allow NYA to impose upon the Harrisons what, in practical effect, would amount to an interest-free, seller-financing obligation that could in theory extend for up to forty years. Not only that, such a reading would also significantly dilute the actual value over time of the $3 million purchase price, during which time the Harrisons would also remain obligated to pay taxes and other expenses associated with the Property. Such a result seems very far from what the parties could have intended under any reasonable reading of the REPC as a whole. *Cf. id.* ("The good faith performance doctrine . . . permit[s] the exercise of discretion for any purpose . . . reasonably within the contemplation of the parties. A contract thus would be breached . . . if a party uses its discretion for a reason outside the contemplated range—a reason beyond the risks assumed by the party claiming the breach." (citation and internal quotation marks omitted)); *Ted R. Brown & Assocs., Inc. v. Carnes Corp.*, 753 P.2d 964, 970 (Utah Ct. App. 1988) ("It is fundamental that every contract imposes a duty on the parties to exercise their contractual rights and perform their contractual obligations reasonably and in good faith.").

¶29 Accordingly, we conclude that the district court incorrectly interpreted the contract to permit NYA to extend the closing indefinitely. Because NYA may not extend the closing indefinitely, we now consider whether, as the Harrisons contend, the closing was required to occur within a reasonable time.

B.      Closing Within a Reasonable Time

¶30     As a corollary to its conclusion that there was no limit to the number of times NYA could exercise the option to extend the Settlement Deadline, the district court determined that the REPC included unambiguous language that provided a specific time for settlement—the Settlement Deadline (October 31, 2007) plus however many one-month extensions NYA chose to exercise. Relying on *Watson v. Hatch*, 728 P.2d 989 (Utah 1986), which states that a "court may allow a contract to be performed within a reasonable time only when the contract is silent as to the time for its performance," *id.* at 990, the district court accordingly concluded that the REPC could not be interpreted to require closing of the purchase transaction to occur within a reasonable time.

¶31     In limited situations, a court may read a term into a contract that "is essential to a determination of [the parties'] rights and duties" and that "is reasonable in the circumstances." Restatement (Second) of Contracts § 204 (Am. Law Inst. 1981). But additional "terms are to be implied in contract, not *because* they are reasonable—although it is clear that they must indeed be reasonable—but because they are necessarily involved in the contractual relationship" such that "it may be said that the parties must have intended them and failed to express them only because of sheer inadvertence or because they are too obvious to have needed expression." 11 Williston on Contracts § 31:7 (4th ed. 2016). Accordingly, when a court reads terms into a contract, it generally does so to "protect the express covenants or promises of the contract," *Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 29, 104 P.3d 1226 (citation and internal quotation marks omitted), and to "prevent a party's promise from being performable merely at the whim of the promisor," *Markham*, 2007 UT App 379, ¶ 23 (citation and internal quotation marks omitted).

¶32    Pertinent to the question here, "the settled rule is that if a contract fails to specify a time of performance the law implies that it shall be done within a reasonable time under the circumstances." *Coulter & Smith, Ltd. v. Russell*, 966 P.2d 852, 858 (Utah 1998). In contrast, as the district court recognized, "[w]hen a contract specifically states the time for its performance, it is plain error to allow it to be performed within a reasonable time." *Watson*, 728 P.2d at 990. Here, the REPC "fails to specify a time of performance." *Coulter & Smith*, 966 P.2d at 858.

¶33    We have already concluded that the parties expressly covenanted to complete the Property purchase and that the extension provision cannot fairly be read to subvert that essential promise between the parties by permitting unlimited extensions. *See supra* ¶¶ 21–28. We also acknowledge that the REPC provided an explicit Settlement Deadline—October 31, 2007—and that it unambiguously provided that each extension payment would extend the settlement to the end of the following month. Thus, every time NYA made an extension payment, the Settlement Deadline was extended to the end of the following month. *See Café Rio, Inc. v. Larkin-Gifford-Overton, LLC*, 2009 UT 27, ¶ 25, 207 P.3d 1235 (explaining that "[w]here the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language" (citation and internal quotation marks omitted)). But those terms do not limit the number of times NYA may extend month-to-month. In other words, while the REPC identifies the original Settlement Deadline and specifies that each extension payment will extend the date thirty days, the end date for the extensions—the date on which the purchase of the Property must finally occur—is not specified.

¶34    Thus, we agree with the Harrisons that even if the REPC provides that the Settlement Deadline will be at the end of the month following the latest extension payment, because it does not limit the number of extension payments, the REPC does not

specify a particular closing date. Instead, once NYA exercised its discretion to extend the Settlement Deadline for the first time, there was no explicit language in the REPC to prevent NYA from continuing to extend the closing on a month-to-month basis for however long it chose to do so, something we have decided the REPC does not permit without limitation. As a consequence, while the express terms of the contract may relate to the time for NYA's performance, and while they may even be unambiguous and explicit as far as they go, the REPC does not provide a date by which NYA must perform its core obligation to complete the purchase of the Property. *See Coulter & Smith*, 966 P.2d at 858.

¶35     We therefore conclude that the REPC does not contain a specific time for performance and, consequently, "the law implies that it shall be done within a reasonable time under the circumstances." *See id.*; *see also Markham v. Bradley*, 2007 UT App 379, ¶ 24, 173 P.3d 865 (stating that "because no standard has been expressly set forth in the REPC, the imposition of a standard of objective reasonableness does not run afoul of the express contract terms"). And because "[w]hat constitutes a reasonable time" is necessarily a fact-intensive question that "depends upon the subject-matter, the nature of the act to be performed, and the situation of the parties," *Salt Lake City v. State*, 125 P.2d 790, 793 (Utah 1942), we accordingly conclude that the district court erred in granting summary judgment to NYA on this issue, *see Cook Assocs., Inc. v. Utah School & Institutional Trust Lands Admin.*, 2010 UT App 284, ¶ 28, 243 P.3d 888 (noting that factual issues are "generally inappropriate for decision as a matter of law").

¶36     Having determined that the district court erred when it determined that the REPC included a specific time for performance of closing the purchase of the Property, we now consider the court's ruling on the legal effect of the Harrisons' rejection of NYA's August 2009 tender of an extension payment.

II. Tender of the August 2009 Extension Payment

¶37    The district court ruled that NYA's August 31, 2009 extension payment was a valid tender and that the Harrisons breached the REPC by refusing to accept it. In particular, the court reasoned that the tender was not conditional because the letter accompanying the payment "only contained conditions that NYA already had a right to insist upon based on the REPC" provision for extensions of the Settlement Deadline at NYA's sole discretion. The court concluded that "NYA's letter to the Harrisons noting its reasons for making the Extension Payments was a display of its discretion." And because the letter accompanying NYA's August 2009 extension payment merely "required the Harrisons to acknowledge rights that the contract had already granted to NYA," the court determined that the tender was not improperly conditional and that the "Harrisons therefore breached the contract by refusing the valid tender."

A.    The Tender Payment

¶38    The Harrisons argue that the August 31, 2009 extension payment was not a valid tender because it "was conditioned on the Harrisons' acceptance of NYA's interpretation of the REPC." We agree.

¶39    The letter that accompanied the August 31, 2009 extension payment stated NYA's position that Addendum 2 had extended the Settlement Deadline and reduced the amount of the extension payments "based on the understanding that it could take several years before this deal could be closed." It then went on to state other reasons for NYA's position that the REPC gave it the ability to extend the Settlement Deadline beyond what the Harrisons had asserted was reasonable, including, in essence, that (1) the price to be paid for the Property "was based on the assumption that it could be developed as single family residential that would maximize development potential of the land" and "the ability to postpone closing until it could be

developed to its maximum potential was crucial to [NYA]"; (2) the parties had agreed in Addendum 2 to extend the Settlement Deadline and reduce the amount of the extension payments "in part to account for the fact that . . . it might be some time before the property could be developed"; and (3) developing the Property "to its full potential" included the extension of Springville City's sewer line to the Property and ensuring "storm drainage readily available," neither of which had been accomplished, as well as reaching a point where the "property [was] economically feasible to develop under zoning ordinances . . . and existing market conditions," which was not yet the case.[5] The letter then specifically stated,

> By negotiating this $6,250 check, *you are agreeing* with my client that it is entitled under the REPC to make these payments in order to postpone closing in accordance with the express terms of the REPC until it is economically feasible to move forward with a residential development of the property . . . .

(Emphasis added.)

¶40  "A tender, to be good, must be free from any condition which the tenderer does not have a right to insist upon." *Sieverts v. White*, 273 P.2d 974, 976 (Utah 1954); *see also* 74 Am. Jur. 2d *Tender* § 22 (2016) (explaining that "to be valid as a tender, an offer to pay to satisfy an obligation must be unconditional" and that an unconditional tender is one "that is coupled either with no conditions or only with conditions upon which the tendering

---

5. We note that the letter does not make any claim that NYA was entitled to extend the Settlement Deadline indefinitely. Rather, it seems to describe what it considers to be a reasonable basis for exercising its discretion to continue to extend the time for closing.

party has a right to insist"). In other words, "[t]he tender cannot impose on the other party a new condition or requirement not already imposed by the contract. If the law were otherwise, one could use a tender to compel the other party to comply with new contractual terms." *Kelley v. Leucadia Fin. Corp.*, 846 P.2d 1238, 1243 (Utah 1992) (citations and internal quotation marks omitted); *accord PDQ Lube Center, Inc. v. Huber*, 949 P.2d 792, 800 n.13 (Utah Ct. App. 1997) ("The prohibition against conditional tender forbids the tendering party from adding new noncontractual conditions or requirements for receiving the tender.").

¶41    Here, the REPC does not expressly incorporate any of the "understandings" that NYA asserted in its August 31, 2009 letter. In particular, there is no mention in the REPC (1) that the purchase price was based on valuing the Property as though it could be developed as single family residential; (2) that the parties had agreed to reduce payments for extension of the Settlement Deadline because it was understood "it might be some time before the property could be developed"; or (3) that there was no obligation on NYA's part to close on the purchase until it was "economically feasible" to develop the Property in light of the availability of utilities, NYA's ability to comply with zoning ordinances, or "existing market conditions" favorable to development. Certainly, the "economic feasibility" of NYA's development plans was nowhere incorporated into the REPC as a condition of closing. And given the express language of the REPC that unequivocally obligates NYA to purchase the Property once the Due Diligence Deadline has passed, NYA's requirement that the Harrisons acknowledge such a condition requires them to cede their ability to realize the full economic benefit of their bargain under the REPC to NYA's "sole discretion." *Cf. Hepburn & Dundas v. Auld*, 5 U.S. (1 Cranch) 321, 332 (1803) (suggesting that plaintiffs' demands that the defendant release all claims and demands before accepting plaintiffs' performance under an agreement was not acceptable

where the agreement did not contain a stipulation that the release of defendant's claims against plaintiffs was a condition precedent to plaintiffs' performance).

¶42 Further, NYA has failed to persuade us that its interpretation of the extension provision as permitting it limitless discretion to extend the settlement is reasonable. In particular, NYA has failed to persuade us that the discretion afforded it under the extension provision permitted it to extend the settlement for any reason and for an unlimited number of times. At some point in time, regardless of the reasons, further postponement of closing would become inimical to the REPC's fundamental purpose of accomplishing the sale and purchase of the Property. And the understandings that NYA stated in its tender letter required the Harrisons to accept a premise that the plain language of the REPC does not support—that under the REPC the feasibility of the Property's economic development was an absolute condition precedent to NYA's obligation to consummate the purchase.

¶43 Moreover, we have also determined that NYA was required to close the sale within a reasonable time under the circumstances. However, NYA's letter attempted to impose upon the Harrisons its unilateral view of what constituted a reasonable time for closing. Indeed, the letter required the Harrisons to concede that NYA alone had the authority to determine when the state of economic feasibility had been reached, based on a number of conditions not expressly addressed in the REPC. But the determination of what point in time NYA was required to close is a factually intensive determination that takes into account the circumstances of both parties. *See Salt Lake City v. State*, 125 P.2d 790, 793 (Utah 1942) ("What constitutes a reasonable time depends upon the subject-matter, the nature of the act to be performed, and the situation of the parties."). While the understandings expressed by NYA in its letter might ultimately be relevant to the determination of a

reasonable time to close the purchase, those understandings cannot conclusively define a reasonable time in the context of the yet unresolved competing interests of both parties. Regardless of the discretion the extension provision afforded NYA, the determination of a reasonable time must take into account not just NYA's concerns, but also the Harrisons'. *See id.*

¶44    And importantly, at the time of the disputed tender, the interpretation of the extension provision was a matter of legitimate dispute between the parties, one that had yet to be adjudicated. By the end of August 2009, the parties were already several months into litigation about the interpretation of the extension provision and whether NYA had breached by failing to close within a reasonable time. In June 2009, NYA had filed a complaint asking for rescission of the contract because there had not been a meeting of the minds about "whether the [Harrisons] can limit the number of times that [NYA] extends the settlement deadline," and the Harrisons had countered in July 2009 with claims that NYA had already breached the REPC by not closing on the purchase of the Property within a reasonable time. Certainly, at the time NYA tendered the payment, its interpretation of the extension provision amounted to essentially a litigation position, however meritorious it might prove to be in the future. Thus, there is merit to the Harrisons' contention that, had they accepted the payment, conditioned as it was, they would have essentially capitulated mid-litigation to NYA's interpretation of a disputed provision of the contract. *Cf.* 86 C.J.S. *Tender* § 26 (2016) ("[A] tender, the acceptance of which requires the abandonment of the creditor's position, is not a valid tender."). And this is especially true where the Harrisons countered NYA's invalid tender with a written undertaking to continue accepting the extension payments (presumably until the dispute was resolved in court) so long as the payments were offered unconditionally, as they had been up to the time of NYA's August tender.

¶45    For these reasons, NYA's demand that the Harrisons agree that NYA was not obligated to close until it determined that the zoning ordinances, market conditions, and other circumstances aligned to produce "economic feasibility" made NYA's tender of the extension payment conditional and therefore invalid. Accordingly, we conclude that the district court erred when it determined that the August 31, 2009 tender was valid and that the Harrisons breached the REPC by refusing to accept it.

B.    The Legal Effect of the Invalid Tender Payment

¶46    Because NYA's August 31, 2009 tender was invalid and NYA chose not to make an unconditional tender in response to the Harrisons' invitation, the REPC's Settlement Deadline became fixed. The REPC explicitly stated that each extension payment extended the Settlement Deadline by only one month. Thus, because the August 31, 2009 tender was invalid, the last legally effective extension payment was made in July 2009, which extended the Settlement Deadline to the end of August 2009.

¶47    The Harrisons argue that to continue the REPC past August 2009, "NYA was required to continue to make Extension Payments under the REPC" after the August 2009 payment was rejected and that their failure to accept the disputed extension payment "did not excuse NYA's subsequent non-performance" in light of their continued willingness to accept unconditional extension payments. As a result, the Harrisons ask us to determine that NYA has breached the REPC "by failing to purchase the Property or make Extension payments" once the Settlement Deadline became fixed.

¶48    But NYA's failure to make an additional valid extension payment after the failed August 31, 2009 tender does not on its face appear to breach the contract—after all, NYA had a choice under the REPC whether to extend the deadline and was not

required to do so. Instead, as we have discussed, the result of failing to make further extension payments was simply to establish a fixed date for the Settlement Deadline.

¶49 And in this regard, the REPC allocated to each party certain tasks to be completed by the Settlement Deadline in order for closing of the purchase to occur. For example, the REPC provides that "'[s]ettlement' shall occur only when all" of certain specified events have occurred; among them, "(a) Buyer and Seller have signed and delivered to each other . . . all documents required by this Contract"; (b) "any monies required to be paid by Buyer . . . have been delivered by Buyer to Seller or to the escrow/closing office"; and (c) "any monies required to be paid by Seller under these documents have been delivered by Seller to Buyer or to the escrow/closing office." The REPC also provides that the purchase will be "considered closed when Settlement has been completed, and when all of the following have been completed: (i) the proceeds of any new loan have been delivered by the Lender to Seller . . . [, and] (ii) the applicable Closing documents have been recorded in the office of the county recorder." Because the district court determined that the Harrisons were in breach for failure to accept NYA's tender, it did not determine whether any of the required settlement events had occurred by the August 2009 Settlement Deadline. Rather, it seems likely that the day had come and gone without the accomplishment of the tasks the REPC required and that the sale and purchase of the Property did not close as the contract contemplated.

¶50 Neither party has addressed on appeal the potential legal implications of the Settlement Deadline having passed without the required events having been performed. Nor did the district court consider the implications of this outcome, because it resolved the parties' competing claims by deciding that the Harrisons had breached by not accepting the tendered extension payment. But we are not in a position to determine on appeal the

consequences for either party under the REPC of the Settlement Deadline having passed without the tasks required by the REPC having been accomplished and, ultimately, without the sale and purchase of the Property having closed.

¶51 In addition, as the Harrisons point out, it is significant that at the time the Settlement Deadline became fixed, the parties were embroiled in litigation involving competing claims that the REPC was unenforceable or had already been breached. For example, NYA had requested in its complaint that the REPC be rescinded entirely because the parties did not have a meeting of the minds regarding the legal effect of the extension provision; it had also asserted that the Harrisons had "anticipatorily or actually breached the REPC by, among other things, demanding that [NYA] close on the Property on or before August 5, 2009." The Harrisons, for their part, had counterclaimed that NYA had breached the REPC and the covenant of good faith and fair dealing by failing to close in a reasonable time. These claims as well as the rights and liabilities of each party pertaining to the extension provision had yet to be adjudicated as of August 31, 2009.

¶52 Moreover, the conclusions we have reached earlier in this decision have undone the major premise undergirding the district court's summary judgment ruling—namely, that the REPC gave NYA the right to extend the Settlement Deadline an unlimited number of times for any reason it chose and the corollary that the Harrisons were obligated to accept any timely proffer of a tender payment NYA made. On remand, the district court will therefore be required to substantially reevaluate the legal effect of the parties' actions in light of our decision.

¶53 For these reasons, although the Harrisons have requested that we find NYA in breach of the REPC for failing to purchase the Property once the Settlement Deadline became fixed and then passed, we conclude that it is premature for us to address

whether the passing of the Settlement Deadline after NYA's failed August 2009 tender had the effect of putting NYA in breach of the REPC, leaving that question for the parties and the court on remand.

### III. The Parties' Other Claims

¶54    Because we conclude that the district court erred when it determined that (1) NYA was entitled to extend the closing indefinitely; (2) the REPC included a specific time for closing; and (3) the August 31, 2009 tender was valid and the Harrisons breached by not accepting it, we do not reach the parties' other claims on appeal. We also do not reach NYA's cross-appeal arguments regarding election of damages, additional attorney fees, and prejudgment interest; those claims are necessarily dependent on the resolution of the case below on remand. And because the district court will be required to reevaluate the parties' claims of breach, we do not reach the Harrisons' other claims—namely that NYA itself breached the REPC by violating the covenant of good faith and fair dealing and by not making additional unconditional extension payments or closing on the Property.

### CONCLUSION

¶55    For the reasons discussed above, we reverse the district court's summary judgment rulings and vacate the final judgment awarding damages and fees to NYA. We remand this case for further proceedings consistent with this opinion.

————————

ORME, Judge (concurring in the result):

¶56    I agree with my colleagues' bottom line, but I disagree with much of their analysis. Thus, I join in the mandate of

reversal with remand, but I get there from a quite different perspective.

¶57　While my colleagues' urge to rescue the Harrisons from their bad bargain is understandable, the district court was absolutely correct in interpreting the contract in accordance with its plain meaning: NYA had the contractual right to extend the closing date from month-to-month, without limits other than those resulting from the exercise of its own business judgment about when would be the best time to close the sale and commence development, upon payment of a stated amount. At least in retrospect, this was not a great arrangement from the standpoint of the Harrisons, who would have been better off with a provision limiting the number of times that NYA could extend the time for closing by paying that amount, or providing that it was a convenience fee only and would not be credited to the purchase price, or having the amount go up by $1000 per month. But they insisted upon none of those provisions in the course of negotiation and thus are stuck with their bargain. And the bargain itself is, perhaps, not all that unreasonable. After all, they wanted to sell the land to fund their retirement, and the monthly closing-postponement fee provided a reliable source of income pending NYA's eventual purchase, even as they continued to reap the benefits of the land's traditional agricultural use. (Clearly, they would have been better off with the larger stream of income that would have been available had they not agreed to reduce the monthly payments by half. Again, though, that was their decision.)

¶58　Turning to the next principal issue, I part ways with the district court and essentially agree with the position ultimately taken by my colleagues, although not all of their analysis. While in my view NYA was free to keep paying the monthly amount to extend the closing date, it had no right to condition the last payment it tendered on the Harrisons' acceptance of the self-serving points made in the letter accompanying its check. Thus,

the Harrisons were free to reject the conditional tender. When NYA did not follow up with unconditional payment of the monthly amount, NYA became obligated to close by a date certain, as specified in the REPC.

¶59   It seems to me that when that date came and went without NYA tendering the purchase price, NYA breached. But I recognize the case may well be more complicated than that, so I have no problem with remanding to let the district court sort out what, exactly, should happen now. *See Halladay v. Cluff*, 739 P.2d 643, 645 n.5 (Utah Ct. App. 1987) ("Trial courts are in a much better position to evaluate an entire case, including its nuances and undisclosed pitfalls, than an appellate court. It is for this reason that where, as in this case, all possible ramifications of a decision on appeal may not be readily apparent, a case will be remanded for such proceedings as are appropriate in view of the guidance offered in the opinion."). But at a big picture level, it seems to me that while NYA won a battle—it is right that it had the option of extending the closing date from month to month—it loses the war. Why? Because it failed to continue making those payments after its improperly conditioned tender was appropriately rejected by the Harrisons, following which it failed to tender the balance due, thereby materially breaching the contract.

_____